[No. 97. Decided March 11, 1891.]

## L. T. CASTOR v. W. H. PETERSON AND L. POOL.

NEGOTIABLE INSTRUMENTS — INDORSEMENT — COMMUNITY
PROPERTY.

The maker of a promissory note payable to the order of a married woman guarantees her capacity to indorse and transfer the same; and the fact that the note is community property will not affect the title of a *bona fide* indorsee for value before maturity, where he has no notice that the note is community property.

*Appeal from Superior Court, Kittitas County.*

Action by L. T. Castor against W. H. Peterson upon a promissory note payable to the order of Mrs. E. E. Pool, and indorsed by her before due to the plaintiff. L. Pool, the husband of Mrs. E. E. Pool, filed a petition of intervention, setting up facts tending to show that the promissory note was community property, and demanded judgment against the defendant Peterson for the amount of said note. Judgment for intervenor, and plaintiff appeals.

*Davidson & McFalls,* and *Reavis & Mires,* for appellant.

A *bona fide* purchaser for value before maturity shall take negotiable promissory notes clear of all equities and can maintain an action thereon. Code 1881, §§ 15, 497. Such holder is not bound to prove his title after he has shown his holding before maturity for value; the burden is on the one who attacks his *bona fides*. *Hotchkiss v. National Banks,* 21 Wall. 359; *Murray v. Lardner,* 2 Wall. 110; *Swift v. Tyson,* 16 Pet. 1–23; *Swift v. Smith,* 12 Otto, 442. When defendant made the note in question, he guaranteed the capacity of the payee, and is estopped from denying the same. Daniel, Neg. Inst., §§ 93, 227, 242; Bigelow, Est., p. 512. The holder of negotiable paper transferred for value before maturity will be protected,

although fraudulently transferred and the indorser had no title, unless *mala fides* is shown. *Park Bank v. Watson,* 42 N. Y. 493; *New Orleans, etc., Co. v. Templeton,* 96 Am. Dec. 385; *Doll v. Rizotti,* 96 Am. Dec. 399; Story, Prom. Notes, p. 148.

While a married woman's indorsement at common law did not render her liable, it still was sufficient to effect a valid transfer. Randolph, Com. Paper, § 289; *Moreau v. Branson,* 37 Ind. 195. If it was community property, the payee had power to transfer it by indorsement, as a note made payable to a married woman, although the presumption may be that it is community property, cannot be indorsed by the husband. *Kempner v. Comer,* 11 S. W. Rep. 194. A bill or note must be negotiated by the *de facto* holder of it. Lawson, Rights, § 1556; *Nightingale v. Witlington,* 8 Am. Dec. 101.

*Pruyn & Ready,* for appellee Pool.

All property acquired by husband and wife or either of them during coverture is *prima facie* community property; the presumption attending the possession of property by either spouse is that it belongs to the community. *Huston v. Curl,* 8 Tex. 239; *Cooke v. Bremond,* 27 Tex. 457; *Smith v. Smith,* 12 Cal. 217; *Meyer v. Kinzer,* 12 Cal. 248; *Mott v. Smith,* 16 Cal. 557; *Durham v. Chatham,* 73 Am. Dec. 230; *Smith v. Strahan,* 67 Am. Dec. 622, note p. 629; *Higgins v. Johnson's Heirs,* 70 Am. Dec. 394; *Love v. Robertson,* 56 Am. Dec. 41; *Depas v. Mayo,* 49 Am. Dec. 88; *McDonald v. Badger,* 23 Cal. 393; *Lake v. Lake,* 4 Pac. Rep. 723; *Morris v. Hastings,* 8 Am. St. Rep. 571; *Althof v. Conheim,* 38 Cal. 230.

The wife could not dispose of the community personal property. Her indorsement alone on the note conveyed no title. *Tyron v. Sutton,* 13 Cal. 490; *Wells v. Cockrum,* 13 Tex. 127, 128. At common law the holder of a prom-

issory note payable to a wife and indorsed by her was liable in trover or replevin at the need of the husband, and the maker was liable for the amount of the note to the husband. Daniel, Neg. Inst., § 242; Randolph, Com. Paper, § 288; *Hemmingway v. Mathews*, 10 Tex. 207. The possession of community property by the wife is the possession of the husband. *People v. Swalm*, 80 Cal. 46 (13 Am. St. Rep. 98).

The opinion of the court was delivered by

HOYT, J.—Defendant W. H. Peterson made his negotiable promissory note to Mrs. Eliza E. Pool or order for the sum of $1,070. This note the payee sold to the plaintiff for a valuable consideration, and indorsed the same, and delivered it to said plaintiff before its maturity. Plaintiff sought in this action to recover upon said note against the maker. L. Pool, the husband, intervened in the suit, and alleged that the money loaned for which the note was given was community property, and claimed that the transfer to plaintiff was void, and that he had no title upon which he could recover of the maker. The court below sustained this contention of the husband, and gave judgment for defendants.

There was no evidence tending to show bad faith on the part of plaintiff, and the only circumstance relied upon to charge him with notice that the note was claimed by the community was the fact that it was payable to a woman whom he supposed to be married. Under these circumstances, we think plaintiff took such a title to the note that he should have been allowed to maintain his action against the defendants. The maker promised to pay Mrs. Eliza E. Pool, or order, and in making the note so payable he guaranteed, to every person taking such note in good faith, her ability to order the same paid to another — that is, to indorse it — and as to every such person buying in good faith and for value such guaranty was conclusive. That

the maker of negotiable paper thus guarantees the capacity
of the payee to indorse and transfer the same seems to
arise from the necessity of the case, and the rule is there-
fore founded upon reason. It is likewise abundantly sup-
ported by authority. See Daniel, Neg. Inst., § 93, and
cases there cited. This rule has been frequently applied
to notes made to and transferred by infants. See § 227 of
authority above cited. Likewise to married women under
the disabilities of the common law. See same authority,
§ 242. In the case of a married woman under the disabil-
ities of the common law such a note was the property of
her husband, and besides she had absolutely no power to
make a contract of any kind, and if, as we have seen, the
maker of a note to such person could not dispute the title
of her indorsee, it is evident that he could not do so in the
case at bar. Under our law the wife is fully competent to
make a personal contract, and an indorsee of such married
woman stands in a much stronger position than under the
common law. Any other rule as to the passing of title to
negotiable paper would be contrary to the universal prac-
tice of the commercial world in its dealing therewith. An
indorsee knows that he is responsible for the genuineness
of the indorsement under which he holds, and he under-
stands that in further transferring it he guarantees that the
first indorser is the payee, and that the indorsement of each
special indorsee is the genuine signature of the person so
named; but we think that it would work a great revolution
in business circles, and cause an unheard of panic therein,
if the doctrine was once established that, in addition to the
responsibilities above named, he also assumed that of a
guarantor of the title and capacity to sell of all prior in-
dorsers.

We do not lose sight of the fact that all property, per-
sonal as well as real, acquired after marriage, is *prima
facie* that of the community; but we hold that, from the

very nature of negotiable paper, one who makes it payable
to the order of any person cannot be allowed to say to a
*bona fide* holder that the authority which he in terms gave
to such person to order the same paid to another is void.
We think, moreover, that, from the nature of such property,
money and negotiable paper bear a different relation to
the community than other property. Not that they do
not belong to the community, as between the spouses and
all others having full knowledge of all the facts, but that,
as between the one who is in possession thereof and one
dealing in good faith and for value, they should be treated
as the separate property of such possessor. We cannot
see that public policy would be subserved by holding the
presumption as to ownership of such possessor to be less
than that of another person who is in the possession thereof
without any semblance of title except such possession.
Yet the books are full of cases where the title to purchasers
in good faith of such property has been sustained although
it appeared that the one from whom title was received had
none except possession. The possession of these classes
of property raises a much greater presumption of title
than the possession of other classes, and we think that the
rules of the law-merchant in relation thereto have not been
changed by our statute.

The claim of intervenor is so unconscionable that courts
would not give it effect unless the statute very clearly
warranted his contention. He says that the community
had $1,070; that it loaned it, and obtained the note in
question; that it delivered said note to plaintiff, and re-
ceived therefor $1,070, and is thus placed in exactly the
same position as before the note was taken; but that it is still
entitled to recover of the maker of the note another $1,070,
thereby, without any consideration having passed therefor,
doubling its money, and this at the expense of the plaintiff,
who, though having contributed his $1,070 to the com-

munity, is turned out of court without a cent. The judgment must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

ANDERS, C. J., and DUNBAR, SCOTT, and STILES, JJ., concur.