[No. 11213.  Department Two.  October 29, 1913.]

ZENAIDE MEYERS, *Appellant*, v. JOHN H. ALBERT *et al.*, *Respondents.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY. Where real property is purchased in this state with money earned in another jurisdiction by a husband or wife, it inures to the person whose money was invested therein.

GIFTS—DELIVERY—DEPOSITS—HUSBAND AND WIFE. Under the rule that a gift is not presumed, and that there must be a delivery passing dominion and control to the donee, the fact that a husband and wife opened a joint account in a bank, each having the right to draw therefrom, does not establish a gift from the husband to the wife of a half interest in the deposits, all of which, except one small sum, were made by him from his separate estate.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 11, 1913, in favor of the defendants, in an action for equitable relief, tried to the court. Affirmed.

[1] Reported in 135 Pac. 1003.

*Shorett, McLaren & Shorett,* and *F. A. Gilman,* for appellant.

*Farrell, Kane & Stratton,* for respondents.

MAIN, J.—This action was brought for the purpose of having determined the interest of the plaintiff in and to certain real estate.

The plaintiff is the widow of Joseph Meyers, deceased; the defendants are the executors of his last will and testament, and his six sons, devisees and legatees in his last will and testament.

On August 19, 1908, the plaintiff and Joseph Meyers were married, in Portland, Oregon. They had been residing in Portland something over a year at the time of their marriage. They had previously resided in Salem, Oregon, for many years, where each had conducted a business. Mr. Meyers was a widower and the father of the six sons hereinbefore mentioned, the issue of a former marriage. The plaintiff was the mother of two children by a previous marriage. A few days prior to the marriage, the plaintiff and Mr. Meyers entered into a written antenuptial agreement by which she was to receive the sum of $10,000 at his death.

On August 29, 1908, Mr. Meyers, accompanied by the plaintiff, went to The Bank of California, in Portland, where he opened a joint checking account in his and his wife's name. At this time $4,000 was deposited in the account. Both were authorized to, and thereafter did, draw checks on the account in their individual names. Thereafter certain sums were deposited aggregating several thousand dollars. The sum of $200, money the plaintiff received from the sale of furniture prior to her marriage, may have gone into this fund; also $1,000 which the plaintiff testified Mr. Meyers gave her as a wedding present on the day of their marriage. All of the other deposits, with the exception of the rentals from the Olive Apartments, were the proceeds of property acquired by Mr. Meyers prior to his marriage to the plain-

tiff. The plaintiff and Mr. Meyers continued to draw from this account upon their individual checks until the latter's death. After his death the plaintiff drew from the account the small balance remaining. On and prior to the date of the opening of this account, and up to the date of his death, Mr. Meyers also had an account with the Capital National Bank, at Salem, Oregon. This account was in his name only, and he alone drew checks upon it.

Early in September after the marriage, Mr. and Mrs. Meyers went to Salem, Oregon, where they remained for two or three weeks, then returned to Portland, and immediately thereafter went to Toppenish, Washington, to visit the daughter of the plaintiff. From Toppenish, they went to Seattle, arriving probably early in October. During the greater portion of the four weeks that they remained in Seattle, they were residing with a relative of Mr. Meyers. While in Seattle they purchased the property in question, known as the Olive Apartments. The purchase price was $35,000, all of which, except the first payment of $1,000, and a later payment of $8,500, was paid out of the joint account in the Bank of California. The $1,000 payment was made with a clearing house certificate, where and by whom issued does not appear. The $8,500 was paid out of the account of Mr. Meyers in the Capital National Bank at Salem. The property was leased, and the monthly payments of rent appear to have all been deposited in the Bank of California account. Some repairs were later made upon the apartments, amounting to about $2,500, which were paid for out of this account.

The plaintiff testified, in substance, that when she and Mr. Meyers left Portland for Toppenish, it was their intention to go to Seattle, buy property and make their home there; that the purchase of the Olive Apartments was in pursuance of this plan. They however departed from Seattle about November 1st, going to Portland, where they lived at the Portland hotel for a few weeks. They then went to

Salem. While at Salem, Mr. Meyers destroyed the will which he had made shortly after the death of his first wife, and also the antenuptial contract executed prior to his marriage with the plaintiff. He thereupon executed a will in which the plaintiff was bequeathed the sum of $20,000. They then returned to Portland, and shortly thereafter went to California, where they remained until April, 1909.

During the spring of 1909, they caused to be constructed a house upon a lot which the plaintiff owned at the time of her marriage to Mr. Meyers. This house cost about $5,000, which, with the cost of furnishing the same, was paid out of the Bank of California account. Thereafter Mr. Meyers deeded, by quitclaim, this property to the plaintiff. Mr. Meyers at different times purchased other real estate in Oregon which was paid for out of this same account. No claim, other than under the will, has been made by plaintiff to such property. After returning from California, Mr. and Mrs. Meyers lived at the Portland hotel until July, 1909, at which time they moved into the house which they had constructed on the plaintiff's lot as aforesaid. Here they lived until the death of Mr. Meyers on January 29, 1911.

On the 19th day of May, 1910, at Portland, Oregon, Mr. Meyers revoked his former will hereinbefore mentioned, and executed a will by which the plaintiff was given all of his household goods, and with the exception of a few small bequests, a one-fifth interest in the remainder of his estate, both real and personal. This will on February 2, 1911, was admitted to probate in Multnomah county, Oregon, of which county the decedent at the date of his death was an inhabitant. The executors hereinbefore mentioned were, by the county court of that county and state, duly appointed as the executors of his will. Thereafter, upon application made to the superior court of the state of Washington for King county, the will was, on April 4, 1911, admitted to probate in this state. On March 18, 1912, the plaintiff filed in the superior court for King county her complaint claiming to be

the owner in fee simple of a one-half interest in the real estate in Seattle known as the Olive Apartments. The cause was tried to the court without a jury. Thereafter, and on March 11, 1913, the court entered a decree wherein, among other things, it was adjudged that the property in question, together with the appurtenances, was the sole and separate property of Joseph Meyers at the date of his death, and decreeing the plaintiff to be the owner in fee simple of an undivided one-fifth thereof under the will. From this judgment, the plaintiff has appealed.

The ultimate question to be determined in this case is the ownership of the Olive Apartments. This must be determined from the character of the fund out of which the purchase price was paid.

Where money earned in a foreign jurisdiction is brought to this state and invested in real property, the title to the property purchased inures to the person whose money was invested therein. In *Brookman v. Durkee*, 46 Wash. 578, 90 Pac. 914, 123 Am. St. 944, 12 L. R. A. (N. S.) 921, it is said:

"Therefore, without entering further into the reasons for the rule, we are clear that personal property acquired by either husband or wife in a foreign jurisdiction, which is by law of the place where acquired the separate property of one or the other of the spouses, continues to be the separate property of that spouse when brought within this state; and it being the separate property of that spouse owning and bringing it here, property in this state, whether real or personal, received in exchange for it, or purchased by it if it be money, is also the separate property of such spouse."

Under this rule, it is plain that, if the appellant had no ownership in the fund from which the property was purchased, she would have no title to the property. It must therefore be determined what interest, if any, the appellant had in the fund from which the purchase price was paid. From the facts stated, it appears that Mr. Meyers had two accounts, one in a bank at Salem, Oregon, which stood in his

own name, and one in the Bank of California at Portland which was in the following form: "Bank of California, national association, Portland, Oregon, in account with, J. Meyers or Zenaide Meyers." It appears that, in making the purchase, resort was had to some extent to the funds in each of the banks. The appellant claims no interest in the account in the Salem bank, and to this no further consideration need be given. As to the account in the Bank of California, it appears that the money deposited therein, other than a small amount, was the separate property of the deceased. If the appellant acquired any interest in this fund, it must be by reason of either a contract or a gift. There is no interest claimed resulting from a contract. But the contention is made that, inasmuch as the account was opened in the name of the two, and that Mr. Meyers expressed an intention that it should be for the two of them, that it became a joint account, and that property purchased within this state with funds drawn therefrom would be community property. The subject-matter of the gift, if there were a gift, was the right to withdraw or recover the money on deposit with the bank. In order to constitute a gift, it is necessary that there be a delivery, actual, constructive or symbolical, which will pass the dominion and control of the subject-matter from the donor to the donee. In *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857, it is said:

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis*, than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that

the law now presumes against a gift, it certainly does not presume in its favor, but requires proof."

In *Liebe v. Battmann*, 33 Ore. 241, 54 Pac. 179, 72 Am. St. 705, speaking of the essentials of a gift, it is said:

"There must be a parting with the dominion over the subject-matter of the pretended gift, with a present design that the title shall pass out of the donor and to the donee, and this so fully and completely, to all intents and purposes, that, if the donor again resumes control over it without the consent of the donee, he becomes a trespasser, for which he incurs a liability over to the donee except after revocation of a gift *causa mortis*. And so essential is delivery as a factor in the transaction that it is said: 'Intention cannot supply it; words cannot supply it; actions cannot supply it. It is an indispensable requisite without which the gift fails, regardless of the consequences.' [Citing authorities]. The reason for the rule requiring delivery is obvious, and is founded upon 'grounds of public policy and convenience, and to prevent mistake and imposition.' "

From the facts stated, it is obvious that dominion and control of the account in the Bank of California never passed from the deceased to the appellant. Mr. Meyers might at any time have withdrawn every dollar of the account up to the moment of his death, and used the same in any manner that he deemed proper. Where an account in a bank is opened in the name of two persons, the money being supplied by one, but each having the equal right to draw upon it, the title to the account does not pass from the one supplying the funds to the one to whom the right to draw is jointly extended. *Denigan v. Hibernia Sav. & Loan Soc.*, 127 Cal. 137, 59 Pac. 389; *Denigan v. San Francisco Sav. Union*, 127 Cal. 142, 59 Pac. 390, 78 Am. St. 35; *Schick v. Grote*, 42 N. J. Eq. 352, 7 Atl. 852; *Taylor v. Henry*, 48 Md. 550, 30 Am. Rep. 486.

In the case last cited, it is said:

"Here, the deposit was in the joint names of the deceased and his sister, and the survivor of them, but subject to the order of either. Having thus retained the power to draw out the money, the deceased did not divest himself of dominion

and control over the fund. He could have drawn out every dollar the day after the deposit, or at any time up to the moment of his death, and applied it in any manner he might have thought proper. It is not contended that the sister had the least right or interest in the money before the deposit; nor is it contended that she acquired any interest therein otherwise than by the supposed gift of the brother; and the only evidence relied on to support the *factum* of the supposed gift, is the form of the entry in the bank-book. But, as will be observed, there are no terms in the entry that import of themselves an actual present donation by the brother to the sister; and the dominion retained by the brother over the fund enabled him to displace and utterly destroy all power conferred upon the sister in respect to the fund."

It follows that, since the appellant acquired no title to the fund, the property into which it went would be the separate property of the deceased, and subject to his disposal by will.

The judgment will therefore be affirmed.

CROW, C. J., MORRIS, ELLIS, and FULLERTON, JJ., concur.