[No. 11984. Department One. January 5, 1915.]

*In the Matter of the Estate of* C. W. SLOCUM.
C. W. KNOWLES, *Appellant*, v. LAURA SLOCUM, *Executrix, etc., Respondent.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—PRESUMPTIONS—BURDEN OF PROOF. Property acquired after marriage, by either husband or wife or both, is presumed to be community property, the burden resting upon persons asserting a separate character to establish that fact by clear, certain and convincing evidence.

GIFTS—EVIDENCE. Evidence of title by gift must be clear, convincing, strong and satisfactory.

GIFTS—ESSENTIALS. To constitute a gift of personal property, there must be an intent to presently give, a subject-matter capable of delivery, and the actual delivery at the time.

GIFTS—DELIVERY—PRESUMPTION FROM POSSESSION—BETWEEN HUSBAND AND WIFE—EVIDENCE—SUFFICIENCY. Community property consisting of stocks, bonds and notes passed to the wife as a gift, where they were assigned by the husband to the wife, and were in her possession for twenty days prior to his death, and were kept by her in a secret place to which she alone had access; under the rule requiring actual delivery, with intent to divest present control and dominion, and that possession by an assignee of such instruments presumes a delivery.

SAME. Similar stocks and notes, made payable to the husband or wife, under the understanding that payments were to be made to the husband during life and after his death to his wife, or to either presenting the certificate, but not assigned, do not, under such cir-

[1]Reported in 145 Pac. 204.

cumstances, pass to the wife as a gift; since in the absence of an assignment, there is no evidence of intent to make a present gift, and possession is not alone sufficient to establish title.

SAME.  For similar reasons, a certificate made payable to the wife, being presumptively community property, does not, under such circumstances, pass as a gift to her, since the fact of possession alone does not establish, by clear and convincing evidence, the husband's intent to make a gift; and in the absence of any assignment, delivery cannot be presumed from possession.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered October 23, 1913, upon findings in favor of an executrix, in a proceeding to compel her to include certain property in the inventory.   Modified.

*Miller, Crass & Wilkinson,* for appellant.

*Henry St. Raynor* and *McMaster, Hall & Drowley,* for respondent.

MAIN, J.—The controversy in this case is over the question whether certain personal property should be inventoried as the community property of C. W. Slocum, deceased, and Laura Slocum, his surviving wife, or whether it was the separate property of Mrs. Slocum.   The property in question had been accumulated while the Slocums were residents of Clarke county, Washington.

On December 29, 1904, C. W. Slocum executed a will, giving the use of the property belonging to him, and his community interest therein, to Laura Slocum, his wife, during her natural life, and at her death to descend to the heirs of C. W. Slocum.   The latter died on September 20, 1912, and at this time was about 78 years of age.   His wife was a few years his junior.   The will was admitted to probate on the 7th day of October, 1912.   It was what is known as a nonintervention will, and Laura Slocum, the wife, was named as executrix.   After the admission of the will to probate, the executrix filed an inventory of the estate.

On December 30, 1912, C. W. Knowles, one of the heirs of C. W. Slocum, deceased, filed a petition in the probate pro-

ceeding, alleging that the executrix had omitted from the inventory filed by her certain property, a part of which is the property in dispute in this case, and asked that she be required to include the same in the inventory as part of the community property of the estate of C. W. Slocum, deceased. To the petition, an answer was filed, setting forth the claim that the property had been given to Mrs. Slocum by her husband about 20 days previous to his death, and that, by reason of such gift, became her separate property. Upon the issues framed, the case proceeded to trial. The trial court found a portion of the property in dispute to be community property, and a portion to be the separate property of Mrs. Slocum. From the judgment entered, C. W. Knowles, the petitioner, appealed. Mrs. Slocum did not appeal.

The property here in controversy, then, is the property which was by the trial court adjudged to be the separate property of Mrs. Slocum. It is as follows: Certificate for 50 shares of stock of the par value of $100 per share, in the Donegan Shoe Company, a corporation; certificate in the Equitable Savings & Loan Association, of Portland, Oregon, for $2,000, dated September 17, 1912; certificate in the same company for $3,000, issued December 20, 1910; certificate in the same company for $8,000, dated May 16, 1911; certificate in the same company for $3,000, dated August 17, 1912; certificate in the same company for $4,000, dated October 21, 1911; certificate in the same company for $5,000, dated February 14, 1912; also a certificate in the Realty Associates, of Portland, Oregon, for $10,000, dated April 22, 1909. In addition to this, there were two notes, one for $200, and the other for $2,500. Further reference to the facts and the evidence will be made when the items of property specified are hereinafter considered more in detail.

There appears to be no conflict in the evidence. Hence, it will not be necessary to review the findings of the trial court. The sole question in this case is whether the title to the property in dispute vested in Mrs. Slocum as her sole and separate

property at the time of the death of her husband, C. W. Slocum. If the property in question had become her separate property at that time, then the judgment of the superior court must be affirmed. If some or all of it had not taken on the character of her separate property, then the judgment must be either reversed or modified. Owing to the numerous items of property involved, a statement of the rules of law which are pertinent to the inquiry will first be made.

In this state all property acquired after marriage by either the husband or the wife, or both, is community property, other than certain well known exceptions which are specified in the statute. Rem. & Bal. Code, §§ 5915 to 5917 inclusive (P. C. 95 §§ 25, 27). Property acquired during the existence of the marriage relation, whether the title thereto be taken in the name of the husband or that of the wife, or in their joint names, is presumed to be community property. 21 Cyc. 1651. This is a rule so well known and so generally established that it is not necessary to assemble the cases in support of the text cited.

Where the claim is made that property acquired after marriage is not community property, the burden rests with the parties claiming the separate character of the property. The presumption as to the community character of the property may be overthrown only by evidence of a clear, certain, and convincing character. *In re Boody's Estate*, 113 Cal. 682, 45 Pac. 858; *Fennell v. Drinkhouse*, 131 Cal. 447, 63 Pac. 734, 82 Am. St. 361.

In order to constitute a gift of personal property, three things are necessary: (a) An intention on the part of the donor to presently give; (b) a subject-matter capable of passing by delivery; and (c) an actual delivery at the time. *Hecht v. Schaffer*, 15 Wyo. 34, 85 Pac. 1056; *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857; *Meyers v. Albert*, 76 Wash. 218, 135 Pac. 1003. The delivery must be such as will divest the donor of the present control and dominion

6—83 WASH.

over the property absolutely and irrevocably and confer upon the donee the dominion and control. *Basket v. Hassell*, 107 U. S. 602. The distinction that exists between gifts *inter vivos* and gifts *causa mortis* need not here be defined. The pivotal facts which give caste to the various transactions in the present case are the same, whether the gifts or attempted gifts be considered *inter vivos* or *causa mortis*. A gift will not be presumed, but he who asserts title by this means must prove it by evidence which is clear, convincing, strong and satisfactory. In *Jackson v. Lamar, supra,* it was said:

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis,* than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof."

From the possession of a note, bond, or deed by an endorsee, assignee, payee or grantee, a delivery will be presumed. *Sharmer v. Johnson,* 43 Neb. 509, 61 N. W. 727; *Castor v. Peterson,* 2 Wash. 204, 26 Pac. 223, 26 Am. St. 854; *Richmond v. Morford,* 4 Wash. 337, 30 Pac. 241, 31 Pac. 513; *Kauffman v. Baillie,* 46 Wash. 248, 89 Pac. 548. A mere passage of the naked possession, however, to one other than the payee or grantee, and to whom it has not been assigned or endorsed, does not meet the requirements of a good delivery. *Sharmer v. Johnson, supra.*

From the testimony of Mrs. Slocum, it appears that, at the time of Mr. Slocum's death, the items of property above mentioned were in her possession, and had been in her possession for about 20 days. They were in a private drawer

with her own private papers. This private place had been used by her for about three years. No one else had the papers after they came into her possession. The possession was with the knowledge of Mr. Slocum. The latter died at home, and prior to that time he and his wife lived together as husband and wife. The drawer in which the papers were kept after they came into the possession of Mrs. Slocum was in a cupboard in the bedroom downstairs in the house occupied by them.

From the testimony of the maker of one of the notes, it appears that the understanding was that, while the notes were made payable to C. W. Slocum or Laura Slocum, during the lifetime of Mr. Slocum payments were to be made to him; but after his death, to his wife. From the testimony of the assistant secretary of the Equitable Savings & Loan Association, with whom the transactions were had with reference to the purchase of the stock in that company, it appears that, while certain of the shares of stock were placed in the name of C. W. Slocum or Laura Slocum, the understanding was that, during the lifetime of both of them, the payments that might accrue would be made to either presenting the certificate. The evidence as it has just been stated is taken substantially from the appellant's abstract. There being no supplemental abstract filed, the abstract of the appellant is recognized as correct.

The items of property in controversy may be divided into three classes. The first class includes stock certificates in various corporations which were issued to C. W. Slocum, or to C. W. Slocum or Laura Slocum, and assigned by C. W. Slocum to Laura Slocum. The stock included in this class is as follows: 50 shares Donegan Shoe Company, par value $5,000; 30 shares Equitable Savings & Loan Association, $3,000; 40 shares Equitable Savings & Loan Association, $4,000; 50 shares Equitable Savings & Loan Association, $5,000; and a profit sharing bond in the Realty Associates of Portland, a corporation, $10;000. The Donegan Shoe

Company stock, on April 4, 1910, was assigned by C. W. Slocum to Laura Slocum, his wife, and "became her sole and separate property." The 30 shares of Equitable Savings & Loan Association stock was issued to C. W. Slocum on December 20, 1910, and were by him assigned to Laura Slocum on December 26, 1910. The 40 shares of Equitable Savings & Loan Association stock on October 21, 1911, were issued to C. W. Slocum or Laura Slocum, and were assigned to Laura Slocum. The 50 shares of Equitable Savings & Loan Association stock was issued to C. W. Slocum or Laura Slocum on February 14, 1912, and were assigned to Laura Slocum on February 20, 1912. The Realty Associates profit sharing bond for $10,000 was issued to C. W. Slocum on April 22, 1909, and was assigned to Laura Slocum on June 22, 1909. All of these items of property, it will be seen, were assigned by C. W. Slocum during his lifetime to his wife Laura Slocum. They were in Mrs. Slocum's possession for 20 days prior to the death of her husband. They were in a place, as she testified, which no one knew about but herself, and to which no one but herself had access. Under the rules of law above stated, we think the title to this property had passed to Mrs. Slocum as her sole and separate property prior to ·the death of her husband.

The second class of the property in controversy includes certificates of stock and promissory notes made payable to C. W. Slocum or Laura Slocum, and which were not assigned. These include 20 shares of stock in the Equitable Savings & Loan Association of the par value of $2,000; 30 shares of the Equitable Savings & Loan Association of the par value of $3,000; a note for $200; and a note for $2,500. The possession of these items was the same as in class one. The evidence, as already indicated, showed that the reason for having the notes and stock made payable to C. W. Slocum ·or Laura Slocum was so that, during their lifetime, payments might be made to either. In the absence of an assignment, there is no evidence that, as to this class of property, C. W. Slocum

intended to make a present gift to his wife. On the contrary, the evidence is that the dominion and control had not passed from him to her. Possession alone was not sufficient to establish title. It is true that, at the time the certificate for 30 shares in the Equitable Savings & Loan Association was issued, Mr. Slocum said to his wife, "Laura, here is another certificate for you." But giving effect to the evidence of the assistant secretary with whom the transaction occurred, it is evident that the husband did not intend by that act to presently give and surrender the dominion and control of that certificate absolutely to his wife.

In the third class, is a certificate issued to Laura Slocum for 80 shares in the Equitable Savings & Loan Association, of the par value of $8,000. This certificate was dated May 16, 1911, and bears no assignment. That it was community property when issued, cannot be well denied. It being community property, in order to change its character to that of separate property, would require evidence, according to the rule above stated, which is clear and convincing. If it became separate property, it must have been by reason of the donation by the husband of his community interest therein. To establish a gift, it is necessary that the evidence be clear and convincing, strong and satisfactory. The only evidence which supports a gift of this certificate is the fact of possession. This is not sufficient. Had the husband survived and asserted title to this certificate as community property, could his claim with any show of reason be denied? This class of property does not fall within the rule that delivery will be presumed from possession by the indorsee, assignee, payee or grantee. Mr. Slocum, relative to this certificate, had performed no act as indorser, assignor, or grantor.

The cause will be remanded to the superior court with direction to enter a judgment directing that the property specified in what we have denominated classes two and three be included in the inventory as community property.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.