[No. 19602. Department Two. April 15, 1926.]

REGINALD VINING, *Appellant*, v. ELIZABETH BUTLER, *as Administratrix, Respondent.*[1]

[1] GIFTS (4, 12)—REQUISITES—DELIVERY—EVIDENCE — SUFFICIENCY. The evidence does not show a sufficient delivery to constitute a gift by a mother to her son of securities deposited in a bank, where it merely appears that the mother delivered to the son a "cash box" containing valuables and papers together with the bank's non-transferable receipts for the securities, saying at the time "Here, take this. It is yours," and at the same time giving to his wife a paper, signed by herself and her late husband, executed a year or two previously, authorizing the bank to deliver to the son all moneys, securities and bonds belonging to the signers.

Appeal from a judgment of the superior court for Chelan county, Jeffers, J., entered May 14, 1925, upon findings in favor of defendant, in an action to establish a gift of personalty. Affirmed.

*Fred Kemp,* for appellant.

*Crollard & Steiner* and *Wm. A. Grimshaw,* for respondent.

PARKER, J.—By this action, as originally commenced in the superior court for Chelan county, the plaintiff sought recovery from the First National Bank of Wenatchee of certain securities held by it in safe keeping, as it claimed, for the estate of Margaret Vining, deceased; and also a balance of a general deposit credit standing upon its books in the name of Margaret Vining. By appropriate proceedings, the bank, disclaiming any personal interest in the securities or deposit credit, caused Elizabeth Butler, as administratrix, to be made defendant in the case, and it proceeded as a controversy solely by the plaintiff, Reginald Vining, as against her; he claiming the securities and deposit

[1]Reported in 244 Pac. 961.

credit as a gift from his mother, Margaret Vining, made to him before her death. A trial upon the merits, before the court sitting without a jury, resulted in a judgment denying to Reginald Vining any relief as prayed for by him, from which he has appealed to this court.

In October, 1922, C. H. and Margaret Vining, then old people, each of more than seventy years of age, residing in Chelan county, having been husband and wife for a great many years, signed a paper reading as follows:

"Malaga, Wash.,
Oct. 27, 1922.

"To the First Nat'l Bank of Wenatchee, Wash.

"You are hereby authorized to deliver and to pay to Reginald Vining or order, all moneys in The First Nat'l Bank that belongs to C. H. and M. Vining both in the savings department and in the chequing account, also all securities and bonds belonging to C. H. and M. Vining.                     C. H. Vining,
"M. Vining, x her mark."

This paper was not then delivered to anyone, nor was it ever delivered to anyone during the lifetime of C. H. Vining. It was, however, after his death and a short time before the death of Margaret Vining, which occurred on May 17, 1924, by her delivered to the wife of appellant, Reginald Vining, in the manner presently to be noticed. We are not advised by this record as to what securities belonging to the father and mother were in the hands of the bank for safe keeping at the time of their signing this paper, though it seems plain that none of the securities here in question was then so held by the bank for them. Nor are we advised as to the then condition of their deposit account.

On December 31, 1923, C. H. Vining died, leaving as his heirs his wife Margaret, their son Reginald, this ap-

pellant, their daughter Elizabeth, this respondent, and five grandchildren, the children of their deceased daughter. Apparently, most of the securities here in question were then in the hands of the bank for safe keeping for the father and mother, and there was then also a substantial joint deposit account to their credit in the bank. Soon thereafter, the daughter Elizabeth, this respondent, became administratrix of the father's estate by appointment of the superior court for Chelan county.

Thereafter, on about May 7, 1924, after going to the home of the son Reginald to live, the mother, as it is claimed, said and did those things which are now claimed by Reginald as effectually making a gift to him of the securities and deposit balance here in question. The mother was then apparently in good health for one of her age. Some ten days thereafter she died as the result of a brief illness lasting only two days.

Soon thereafter, Elizabeth became administratrix of the mother's estate by appointment of the superior court for Chelan county. At the time of the mother's death, there were, in the hands of the bank for safe keeping, securities of the value of $6,250, apparently belonging to her; that is, the receipts issued by the bank therefor were issued in her name. These receipts were merely written evidences of the bank having the securities for safe keeping for her, and each had printed upon its face in large capital letters the words "not transferable." The proven facts strongly suggest that these securities were the community property of the mother and father, though we need not here decide that question. The balance of the deposit credit at that time was $177.91. This stood in the name of the mother.

We now notice the facts which more directly bear upon the claimed consummation, especially the de-

livery of the gift by the mother to Reginald. The mother and father kept their valuable papers in a metal box. In this were kept at all times the receipts issued by the bank for the safe keeping of their securities and also the paper above quoted which had been signed by the father and mother on October 27, 1922. Until some ten days prior to the mother's death, the box and its contents had always been in the possession of the father or the mother. Of course, the son Reginald could not be permitted to testify "as to any transactions had by him with or any statement made to him" by his deceased mother. Section 1211, Rem. Comp. Stat. So we have only the testimony of his wife as to what occurred at the time of the claimed consummation of the gift by the mother to Reginald, his wife being the only person then present. She testified as follows:

"Q. What happened, do you remember, when she [the mother] first reached your house? A. She came in with that cash box, as she called it; and this paper, just as you see it now, was folded very small in her hand. Q. The paper you refer to—I will hand you this paper, marked 'Exhibit No. 1' for identification. Is that the paper? [Paper above quoted signed by the father and mother on October 22, 1922.] A. That is the very paper. She had it in her hand, and the cash box in the other hand. She gave me the paper and gave her son the box, and she says, 'Here,' she says, 'Take this now. It is yours,' she says, 'I can't do any more.' Q. She had the paper, you say, out of the box. A. The paper was not in the box, it was in her hand, folded in her hand. Q. She handed the box to Reginald? A. Yes, handed the box to Mr. Vining. Q. Do you remember whether she said anything more with reference to what you just said about her wish? A. I said to her at the time, 'You, perhaps, better not do this at this time.' She said, 'Yes, I am ready to do this now. I have done all I can.' She says, 'This was

always the old man's and my wish, that Reg. and you should have this.' . . . Mrs. Vining had laid the box on the table, and she says to take this and put it away. I said to come see where I put this. She said, 'No, I don't want anything more to do with it.' She said, 'It is yours, I don't want anything more to do with it.'"

This is in substance the whole of the testimony touching directly what occurred and what was said and done upon that occasion. There is no evidence as to what the son Reginald there said or did.

It is to be kept in mind in our present inquiry that the theory upon which Reginald seeks recovery is that of gift by the mother directly to him and not upon the theory of a gift by the mother to him and his wife jointly, or to his wife separately. Indeed, for him to rest his recovery upon the theory of a gift to himself and wife jointly, or to his wife separately, would be to at once put out of the case all of her testimony, because of her interest, under the provisions of § 1211, Rem. Comp. Stat., above noticed; and thus leave the record without any evidence of delivery in consummation of the claimed gift.

[1] It is plain that Reginald seeks recovery upon the theory of a gift having been made to him by his mother, effectual immediately, and not upon the theory of a gift having been made by his mother to take effect upon her death. It is settled law that such a gift, to be effectually made, must be accompanied by actual delivery of the personal property which is the subject of the gift. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204.

We are of the opinion that the record before us does not show that there was ever any delivery, actual or symbolic, of the securities here in question by the mother to the son Reginald. The testimony of his wife

clearly negatives any delivery by the mother to Reginald of the paper signed by her and the father on October 27, 1922, which seems to be particularly relied upon by Reginald as evidencing an intent on the part of the mother, as well as the father, to give to him the securities in question. Whatever that paper may mean in that behalf, it plainly was never delivered by the mother to Reginald. Besides, the testimony of the wife of Reginald above quoted, when critically analyzed, points to the physical delivery of the box to her, rather more than to Reginald; and further, the delivery of the box in any event would be nothing more than the delivery of the non-transferable receipts evidencing the holding of the securities for safe keeping by the bank. Manifestly, those securities were capable of manual delivery, and they were not so delivered. Nor was any transferable paper evidencing the bank's holding of the securities by the father or mother ever issued by the bank, so that the transfer of such paper might become a symbolic delivery of the securities. What we have already said also renders it plain that there was no delivery or transfer of the deposit credit such as to support a gift thereof by the mother to Reginald.

We conclude that the judgment of the trial court denying relief to Reginald must be affirmed. It is so ordered.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.