[No. 29471. Department One. November 17, 1944.]

THE INHERITANCE TAX DIVISION et al., Appellants, v. THE GARDNER CHAMBERLIN ESTATE, Respondent.[1]

[1]Reported in 153 P. (2d) 305.

*The Attorney General, Edward J. Reilly,* and *R. W. Nuzum, Assistants,* for appellants.

*Paine, Lowe, Davis & Russell,* for respondent.

MILLARD, J.—In September, 1940, Gardner Chamberlin, a long-time resident of Spokane and an extensive property owner, owned an undivided one-half interest in several pieces of business property in that city. The other one-half interest had belonged to his brother, Dr. Theodore Chamberlin, a resident of Boston, Massachusetts, who died in 1938. Gardner Chamberlin had other investments besides his real estate. The net income from his real estate was in excess of fifteen thousand dollars per annum. The two brothers had a number of discussions respecting the disposition of their estate. Theodore Chamberlin devised to a local charity his interest in the above-mentioned real estate and, when Gardner Chamberlin died June 1, 1942, his one-half interest in the real estate mentioned passed, under his will, to the same charity.

Gardner Chamberlin consulted his attorney concerning the question of gift exemptions. He stated to his attorney in 1940 that he intended to give to certain small children of his nephew, who was the son of Dr. Theodore Chamberlin, annual gifts in an amount within the exemptions. In September, 1940, Mr. Chamberlin, accompanied by his attorney, went to the Spokane post office, where Mr. Chamberlin arranged for the issuance to each of the three children war savings bonds of the maturity value of five thousand dollars. He informed his attorney that it was his purpose to make a trip to California where his nephew lived when he would deliver the bonds to the mother of the three children. In a letter about the time of the purchase of the bonds, Chamberlin wrote to the mother of the children in which he stated that, in addition to some checks he was sending for the babies, he had bought

"Baby Bonds to the limit for each without taxes. They have to run for ten years, compounded every six months. I do not want you to tell anything or anybody about this as

it will only make the others jealous. I intend to do the same thing every year.

"I am keeping the bonds in an envelope with their names on it with your address in case I am not here at the end of ten years, then I want you to look after them as their guardian."

In September, 1941, Chamberlin again procured bonds of the same maturity value payable to the same children, with this exception: the second group of bonds named the payee as "Mr. Frederick Dean Chamberlin, II, payable on death to Mr. Gardner Chamberlin, Box 1135, Spokane, Wash." This transaction was also discussed by Chamberlin with his attorney. The same month the bonds were issued, Chamberlin wrote to his nephew that

"On the 4th of August I put the limit away for my Babies in Baby Bonds as I did last year to be held ten or 12 years, and if I go then their natural guardian will take charge of it. If I live for ten years, it will accumulate to quite a lot that is why I want it looked after carefully. . . ."

Mr. Chamberlin died June 1, 1942, while on a visit to his former home in Concord, Massachusetts. Among his securities, when his safe deposit box in Spokane was opened, his executor found three envelopes, on each of which was written the first name of one of the children in pencil and then in the handwriting of the deceased in pen and ink the full name of one child. The bonds were listed by the executor in the inventory of the estate with a note that he was not certain of their status. Subsequently, the three children to whom the bonds were issued brought an independent action through their guardian against the executor to have the bonds stricken from the inventory and to recover possession. The trial court held that the bonds were not a part of the estate of Gardner Chamberlin and ordered them stricken from the inventory and adjudged the bonds were the property of the three children. The executor made his inheritance tax report in the regular way. The supervisor of the inheritance tax division claimed that the bonds should have been included as a part of the taxable estate, made findings to that effect, and assessed a deficiency tax on the bonds.

Exceptions were taken to the findings of the supervisor and the cause was tried to the court, which concluded that the bonds constituted a contract entered into between Chamberlin and the United States of America for the benefit of the named payees and that the decedent's estate has no interest in the bonds and they are no part of the decedent's estate and did not pass by the statute of descent or under the decedent's will. Judgment was entered accordingly. The supervisor appealed.

The bonds which the state seeks to tax come within two classes: (1) All of the bonds which the state contends never represented a complete gift and were therefore a part of the estate of the deceased; (2) bonds of the maturity value of fifteen thousand dollars, which were included in the above class, but regarding which the state contends that, since they were payable in case of death of the payee to Gardner Chamberlin, his estate still had an interest in those bonds even if the gift was complete.

Our inheritance tax statute, which is not a tax upon property but is a tax upon the right to receive property (*In re Sherwood's Estate*, 122 Wash. 648, 211 Pac. 734), provides:

"All property within the jurisdiction of this state, and any interest therein, . . . which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift made in contemplation of the death of the grantor or donor, or by . . . gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor to any person in trust or otherwise, shall, for the use of the state, be subject to a tax . . ." Rem. Rev. Stat. (Sup.), § 11201 [P. C. § 7051], Laws of 1937, chapter 106, p. 420, § 1.

The attorney general conceded that the bond transactions were not made in contemplation of the death of the donor. With that portion deleted, the applicable portion of the statute reads as follows:

"All property within the jurisdiction of this state, and any interest therein, . . . which shall pass by will or by the statutes of inheritance of this or any other state, . . . or gift made or intended to take effect in possession

or in enjoyment after death of the grantor or donor to any person in trust or otherwise, shall, for the use of the state, be subject to a tax. . . ."

In 1940, Gardner Chamberlin made a loan in the amount of $3,750 to the United States. Throughout this opinion we refer to only one of the named payees, as all are less than fourteen years old and the bonds are all in the same form. In acknowledgment of Gardner Chamberlin's loan to it, the United States gave to the lender a piece of paper which reads, so far as material:

"THE UNITED STATES OF AMERICA
For Value Received promises to Pay to
MR. FREDERICK DEAN CHAMBERLIN, II
Box 1803
Spokane, Wash.
ONE THOUSAND DOLLARS

"Without interest, ten years from the date as of which this bond is issued. This bond is redeemable at the option of the owner during any period after said issue date (but not within the first sixty days) in an amount equal to its redemption value during that period as shown by the following . . .

"This is a United States Savings Bond of Series D, authorized by the Second Liberty Bond Act, approved September 24, 1917, as amended, and issued pursuant to Treasury Department Circular No. 596, dated December 15, 1938, to which reference is made for a statement of the rights of holders, as fully and with the same effect as though herein set forth.

"This bond is not transferable; and, except as provided under said circular, it is payable, at maturity or on earlier redemption, only to the registered owner and upon the presentation and surrender of this bond with the request for payment duly executed on the back hereof, all in accordance with the provisions of said circular and the regulations prescribed from time to time thereunder. . . ."

It will be noted that the United States promised to pay to Frederick Dean Chamberlin, II, a certain sum of money, but, by the regulations which control and which were made a part of the bond by reference, the money would be paid to no one other than the named payee, with certain excep-

tions which are not existent in the case at bar. Of course, the most important exception is in case of the death of the named payee.

So far as the United States, which is the debtor, is concerned, it has no further obligation to the person who furnished the consideration. That person has no claim upon the debtor, and to him the debtor is not obligated in any amount. The symbol, the piece of paper itself, is of no value to anyone gaining possession of it other than the named payee, because it is not transferable by delivery or otherwise, and the United States will not recognize the ownership of another person. The bond is not subject to execution or attachment and title thereto cannot pass by any legal process. This paper is one by which the United States unequivocally bound itself to the named payee.

In September, 1941, exactly the same transaction took place, except the bond was designated "Series E" and the body of the bond refers to treasury department circular No. 653, dated April 15, 1941. This bond recites that the United States of America, for value received, promises to pay to "Mr. Frederick Dean Chamberlin, II, payable on death to Mr. Gardner Chamberlin, Box 1135, Spokane, Wash. One Thousand Dollars."

An examination of the circulars mentioned discloses that the registered owner only can collect the debt from the United States. Each circular provides that, in case of the disability or death of the registered owner, where there is no co-owner or other designated payee, instructions should be obtained from the treasury department directly as to the handling of the matter.

In the action brought by the named payees, through their guardian *ad litem*, against the executor of the Gardner Chamberlin estate to have the bonds stricken from the inventory, the trial court was of the view that the transaction between the decedent and the United States was a simple loan contract made by the decedent with the United States government for the benefit of third persons, the named payees in the bonds in question, and that the symbol

representing the debt was the property of the payees and should be delivered to them.

It is the theory of counsel for respondent that, the moment Gardner Chamberlin made the loan to the United States and directed that the obligation representing the debt be made payable to Frederick Dean Chamberlin, II, there was a completed gift to the named payee of the bond.

The situation in the case at bar is analogous to one where a party furnishes the consideration and directs that a registered bond or stock certificate be issued in the name of another party and the record is made upon the registration books of that issuance, or where a party surrenders a registered instrument and causes it to be transferred to another party and a record is made upon the registry books of that transfer. In such cases there is a complete passing of title by gift or otherwise, even if the party causing the transfer retains physical possession of the paper which is, as stated above, only a symbol or evidence of the ownership. *Simonton v. Dwyer,* 167 Ore. 50, 115 P. (2d) 316; *Thomas v. Thomas,* 70 Colo. 29, 197 Pac. 243; *Phillips v. Plastridge,* 107 Vt. 267, 179 Atl. 157, 99 A. L. R. 1074; *Chicago Title & Trust Co. v. Ward,* 332 Ill. 126, 163 N. E. 319; *In re Townsend,* 5 Dem. (N. Y.) 147.

It is clear from the evidence recited above that there cannot be any question but that the decedent intended to make the proceeds of the bonds available to the children of his nephew. He directed the issuing officer to provide for payment of the bonds to the children, and the bonds were carefully placed in an envelope for each child and the child's name written upon the envelope in which were the bonds given to that child. In confirmation of the gift, he immediately wrote to the mother of the children and informed her what he had done. The gift in each case was a completed one, full right, title, and ownership in the money represented by the bond having passed to the named payee whom Gardner Chamberlin procured the United States to register as the owner of the debt.

The contention that, as to the second group of bonds, which were payable to named payees on whose death the

bond in each case was payable to Gardner Chamberlin, there was a possibility of reversion which was taxable, is without substantial merit. *Helvering v. Hallock,* 309 U. S. 109, 84 L. Ed. 604, 60 S. Ct. 444, is not in point. The section of the United States statute under which that case was decided is a clause of the Federal estate tax act which is not found in our inheritance tax statute. It is clear from a reading of the opinion in *Helvering v. Hallock, supra,* that the United States supreme court did not intend to give to a section of the Federal estate tax statute an unreasonable construction which would include in the gross estate a possible reversion which was so remote as to be improbable.

· It is quite true that, as to the group of the bonds which Gardner Chamberlin caused to be issued to his beneficiaries but with the added provision "payable on death to Mr. Gardner Chamberlin," Mr. Chamberlin had a possibility of reversion—a very remote possibility and one entirely beyond his control. On Mr. Chamberlin's death the payees acquired no greater title or right than had existed prior to Mr. Chamberlin's death, by whose death nothing passed to the named payees. Mr. Chamberlin was seventy-nine years old when he made a direct transfer to persons who were little more than babes in arms.

Our statute (Rem. Rev. Stat. (Sup.), § 11206 [P. C. § 7057], Laws of 1939, chapter 202, p. 706, § 7, amending Laws of 1917, chapter 146, § 4, as amended) provides that, when property is transferred and the estate of the transferee is dependent upon contingencies or conditions whereby the estate may be wholly or in part defeated or abridged, the tax shall be imposed

". . . upon such transfer at the highest rate which on the happening of any such contingencies or conditions would be probable under the provisions of this act and such tax so imposed shall be due and payable in the same manner as other taxes."

Prior to the 1929 amendment of the foregoing section, the word "possible" was used instead of the word "probable." The use of the word "probable" in lieu of the word "possible" makes quite a difference.

In *In re Waterman's Estate,* 173 Wash. 101, 22 P. (2d) 53, we held that, where a legacy is left to a son forty-eight years of age, with the remainder over in case of his death to his aunts who were more than sixty years old, the contingency that the son would outlive the aunts was more probable than the reverse, and the tax should be computed accordingly.

In *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433, we took judicial notice of the fact that two children, aged fifteen and sixteen, would probably outlive a sister of their mother. We said:

"While it is possible that the two children may not reach their majority, it is likewise possible that some of the other contingencies may never happen. We judicially know that it is more probable or more likely that the two children will arrive at their majority rather than predecease the decedent's sister or the heirs of the latter. We can hardly hold, as a matter of law, that the probability is that the two children of the ages of fifteen and sixteen years will not survive their mother's sister."

Manifestly, there is no basis for the inclusion of the bonds of 1941 in the estate for taxation purposes.

*Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003, cited by counsel for appellant, is not in point. In that case a husband deposited his separate funds in a joint account with his wife. Either spouse could withdraw any part or all of the account. Upon his death it was contended by the wife that the bank deposit was a gift to her. We held that, each having the right to draw from the joint account, there was no gift from the husband to the wife of a one-half interest in the deposits; that the husband did not surrender control, but merely created a situation where the wife might take control of the subject matter by exercising her right to withdraw all of the money in the joint account.

*Decker v. Fowler,* 199 Wash. 549, 92 P. (2d) 254, 131 A. L. R. 961, and *In re Gaudette's Estate,* 165 Wash. 412, 5 P. (2d) 503, cited by counsel for the state tax commission, are not in point, as in each case, which distinguishes those cases from the case at bar, the right to receive the property was

taxable as a transfer to take effect in possession or enjoyment at or after the death of the transferror.

The facts in *Decker v. Fowler, supra,* are as follows:   In 1935 Charles A. Marino purchased United States savings bonds which recite that the United States "Promises to pay to Mr. Charles A. Marino, Payable on Death to Mrs. May Decker."   The regulations of the Federal government provided in that case that, in the event of the death of the owner, the bonds were payable to the beneficiary named therein.   On the death of Marino, Mrs. Decker brought an action against administrator Fowler to strike the bonds from the inventory of the estate of decedent Marino and to require delivery of the bonds to her.   On appeal of the administrator, we reversed the judgment in favor of Mrs. Decker and held, in effect, without citing the controlling statute (Rem. Rev. Stat., § 11201), that the transfer of the bonds to Mrs. Decker was intended to take effect in possession or in enjoyment after the death of donor Marino; hence, the transfer was subject to tax.   We stated that the right of Mrs. Decker to remain as beneficiary until the bonds were either paid before or after the death of their *owner,* was not controlling, inasmuch as Marino had the right, during his lifetime, to call for the payment of the bonds, and, having this right, the proceeds of the bonds had not passed beyond his dominion and control during his lifetime.

In the case at bar, Gardner Chamberlin (the decedent) was not the *owner* of any of the bonds.   He did not have the right, during his lifetime, to call for the payment of the bonds, all of which were owned by the named payees thereof.   He had no more than a contingent interest in the second group of bonds.   In case of the death of the named payee in each of the bonds of the second group, the bond, in such event, was payable to Gardner Chamberlin.

In *In re Gaudette's Estate,* 165 Wash. 412, 5 P. (2d) 503, the plaintiff successfully waged an action for specific performance of an oral contract to bequeath and devise property.   We correctly held that the transfer was subject to an inheritance tax as a transfer of property "intended to

take effect  .  .  .  after the death of the grantor or donor," within Rem. Comp. Stat. (now Rem. Rev. Stat.), § 11201.

The facts in *Decker v. Fowler, supra,* and in *In re Gaudette's Estate, supra,* manifestly bring those two cases within the purview of Rem. Rev. Stat., § 11201, and distinguish them from the case at bar.

The judgment is affirmed.

SIMPSON, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.

