[No. 34922.   Department One.   February 19, 1959.]

WILLIAM EWING STRINGFELLOW, *Respondent*, v. VIRGIL O. STRINGFELLOW, *Appellant*.[1]

[1]Reported in 335 P. (2d) 825.

*Floyd M. Reischling* and *Byron D. Coney*, for appellant.

*Riddell, Riddell & Williams*, for respondent.

MALLERY, J.—This is an appeal from a summary judgment for the plaintiff in an action to recover personal property.

From 1949 through 1955, the appellant, Virgil O. Stringfellow, who was defendant below, and his wife made annual purchases with community property funds of eight one-thousand-dollar United States savings bonds, Series E, and *caused them to be issued in the name of their minor son,* William Ewing Stringfellow, the plaintiff in this action and respondent here. In 1956, the father and mother paid for seventy-five shares of common capital stock of the Seattle-First National Bank and *caused the stock certificate to be registered in the name of their minor son.* The admitted intent of the parents was to make a gift to their son, but the father retained possession of the stock certificate and the bonds. He did this as bailee with the purpose of keeping them safe for his minor son. He manifested this purpose in a letter, which we set out:

"Christmas 1957

"Dear Ewing:

"I am enclosing a certificate for 88 shares of the common capital stock of Seattle-First National Bank purchased for you this year as a gift from your mother and me. This is in addition to the 75 shares issued to you in December 1956 and brings your total ownership up to 163 shares at a cost of $12,050.50 for the two certificates. Will you please return the certificate to my office to be placed in *safekeeping* with the other one.

"May God bless and watch over you.

"All my love<br>"Dad" (Italics ours.)

In 1958 in the superior court of King county, the wife obtained a decree of divorce from the appellant. Subsequently, she commenced this action as guardian *ad litem* for her son to recover possession of the stock certificate and bonds from her ex-husband. During the pendency of the action, the son attained his majority and was substi-

tuted as party plaintiff. There is no controversy over the eighty-eight shares of bank stock mentioned in the letter quoted.

Respondent moved, with supporting affidavits, for a summary judgment under Rule of Pleading, Practice and Procedure 19, 34A Wn. (2d) 81, as amended, effective November 1, 1955. No controverting affidavits were filed by appellant. The trial court granted the motion.

Appellant contends the summary judgment was improperly granted for the reason that his cross-complaint raised genuine issues as to material facts as effectively as counter affidavits would have done.

Rule of Pleading, Practice and Procedure 19, *supra,* provides, *inter alia:*

"(e) Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made *on personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." (Italics ours.)

■ Appellant's answer and cross-complaint were verified by his attorney *on belief only.* Such a verification fails to raise an issue as contemplated by the rule. Under these circumstances, respondent's affidavit must be accepted as stating the established facts of the case. If respondent's affidavit could be controverted by a pleading verified on belief, a motion for a summary judgment would amount to no more than a judgment on the pleadings or a motion to dismiss. We hold that the italicized language in the rule is controlling here. *Shotwell v. United States,* 1 F. R. Serv. 2d 56c.41-1. We find no defect in the procedure followed by the court in granting the summary judgment.

■ On the merits, the appellant claims there was no gift of stock because he did not deliver the stock certificate to the respondent. We do not agree. The father and mother, with intent to make a gift to the son, *caused the issuance of the stock certificate in the son's name.* The father, who never had title to the stock, retained possession of the stock certificate as bailee for safekeeping only. The dividends

were paid by checks in the son's name and deposited in his account. RCW 23.01.010 provides, *inter alia*:

"As used in this chapter, . . .

"(8) A 'certificate of stock' is a written instrument signed by the proper corporate officers, as required by this chapter, and evidencing the fact that the person therein named is the registered owner of the share or shares therein described."

RCW 23.80.010 provides:

"Title to a certificate and to the shares represented thereby can be transferred only

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or bylaws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

The appellant, being a stranger to the title to the stock, has always been powerless to affect it in any way. At the time he and his wife bought the stock with community funds with directions to issue the certificate in their son's name and with a present intention to make a gift, they had taken all steps necessary to vest title in their son.

The appellant makes the same contention regarding the bonds as he did regarding the stock. We think the same rule applies to both. 31 CFR 412, § 315.11, provides, *inter alia*: "Savings bonds are not transferable and are payable only to the owners named thereon, . . ."

In *Inheritance Tax Division v. Gardner Chamberlin Estate*, 21 Wn. (2d) 790, 153 P. (2d) 305, we said:

"The situation in the case at bar is analogous to one where a party furnishes the consideration and directs that a registered bond or stock certificate be issued in the name of another party and the record is made upon the registration books of that issuance, or where a party surrenders a registered instrument and causes it to be transferred to another party and a record is made upon the registry books of that transfer. In such cases there is a complete passing of title by gift or otherwise, even if the party causing the transfer retains physical possession of the paper which is, as stated above, only a symbol or evidence of the ownership. [Citing cases.]"

Under the rule of *Inheritance Tax Division v. Chamberlin, supra,* a gift is complete when the donor furnishes the consideration for United States savings bonds and, with a present intention to make a gift, causes the United States to register the donee as owner of the bonds.

The judgment is affirmed.

WEAVER, C. J., HILL, DONWORTH, and OTT, JJ., concur.