JOHN CUNNINGHAM ET UX. *v.* J. F. BLANCHARD ET AL.

Special Term at Brattleboro.

November, 1910.

Reargued at the May Term, 1911.

Present : ROWELL, C. J. MUNSON, WATSON, HAZELTON and POWERS, J.J.

Opinion filed April 5, 1911.

*Specific Performance—Incidental Relief—Statute of Frauds— Pleadings—Necessity—Vendor and Purchaser—Divisible Contracts—Accounting—Defences—Fraud—Misjoinder of Parties —Waiver—Rehearing in Supreme Court—Grounds—P. S. 1313-1316—Mistake of Law—Estoppel on Rehearing to Allege Error.*

An oral contract relating to land is as enforceable in equity as if in writing, unless the Statute of Frauds is pleaded.

Where equity has jurisdiction of a suit for specific performance of a stipulation in an oral contract for the purchase of land, that the contract be reduced to writing, jurisdiction will be retained for all purposes, including an accounting by defendants for the value of the land.

Orator and defendant agreed that defendant should purchase orator's land, and that orators should have the option of repurchasing a part thereof called the "core" within a reasonable time; and that the remainder of the land should be divided into lots and sold by their joint efforts, the proceeds above a designated amount to be equally divided between them. Orator did not offer to repurchase the "core" within a reasonable time, and defendant sold it to another. *Held,* that the contract was divisible, the part relating to orator's option to repurchase being distinct from that entitling him to a part of the proceeds of the lots, so that he could enforce his equitable rights to the latter, though he had lost his rights as to the former.

Where a bill in equity shows on its face a misjoinder of defendants, a defendant who did not demur on that ground, nor raise the question in his answer, waived that objection.

Orator and defendant agreed that defendant should purchase orator's land, and that a part of it should be divided into lots and sold by their joint efforts, and the proceeds, above a designated amount, be equally divided between them. *Held,* that the fact that orator, to induce defendant to purchase the land, fraudulently represented to him that

orator had customers for several of the lots, would not prevent orator from obtaining from defendant an accounting for the proceeds of the lots, defendant having neither rescinded nor offered to rescind the contract for fraud.

The rights of parties should be determined as of the date of the beginning of the suit, and not as of the time of trial.

A rehearing in Supreme Court, under P. S. 1313-1316, will not be granted for the purpose of giving opportunity to present new questions.

As a general rule, failure fully to present a case on the original hearing in Supreme Court is not ground for granting a rehearing; but a rehearing may be had if a material mistake of law is made in deciding questions raised on the original hearing.

In a suit in equity for an accounting for lots purchased under a contract for resale and division of the proceeds between the parties, where, in the original hearing in Supreme Court on appeal, defendant tacitly conceded that he must account if his objections to an accounting were not sustained, as they were not, and seemed to think that the accounting would be as of the time of the hearing before the master, he cannot well complain on rehearing that, for the purpose of an accounting, the decision on the original hearing took the value of the lots as of the commencement of the suit, rather than at the time of the hearing before the master, for that probably benefited defendant, as the lots were increasing in value.

APPEAL IN CHANCERY. Heard on the pleadings, master's report, and orator's exceptions thereto, at the March Term, 1910, Orleans County, *Waterman,* Chancellor. Exceptions overruled, and bill dismissed with costs. The orators appealed.

This is a suit in equity against J. F. Blanchard, W. C. Perkins and David G. Perkins to secure the orator's rights in certain real estate under an oral contract with defendant Blanchard.

The master finds the following: The orators are husband and wife and lived on the premises in question, of which they were tenants of the entirety, and which consisted of about four acres of land on which were a large two-story dwelling house and ell, and a large barn. On September 10, 1907, there became absolute a decree in favor of the Orleans Trust Company foreclosing the orators' rights in those premises, where they still lived. That decree on November 5, 1907, amounted to $3,873. On September 30, 1907, the Orleans Trust Company informed the orators that, while not agreeing to do so, if before the first day of the following November the orators produced a customer who would pay said decree, a conveyance would

probably be made.  There was no evidence that defendant Blanchard ever knew of that suggestion.  Soon thereafter orator John, who throughout, with the knowledge and consent of his wife, acted for them both, had several talks with defendant Blanchard about the latter's purchasing the premises, which Blanchard thereupon  carefully examined, and finally it was agreed between the orators and Blanchard that the latter should purchase the premises from the Orleans Trust Company at the amount of the decree; that a designated portion of the land should be surveyed into building lots; that a road should be constructed along a designated course to accommodate those lots; that, at the price of $3,000 to be paid within a reasonable time, the orators should have the opportunity to purchase that portion of said premises called the "core," which was the portion whereon said buildings were located, and bounded by said lots and proposed road; that the barn and ell were to be the property of Blanchard with the right to remove the same; that orator John and Blanchard should use their joint efforts to sell said building lots; that the first money derived from such sales should be used to reimburse Blanchard for the amount he should have expended in excess of the $3,000 he was to receive for the "core," the  agreed amount of which reimbursement was $900 and that the remainder of the money derived from such sale, should be equally divided between the orators and Blanchard; and that this oral agreement should be reduced to writing.

In accordance with this agreement, Blanchard on November 5, 1907, paid the Orleans Trust Company $3,873, the amount of said decree, and took a deed of said premises from it to himself; and soon thereafter he leased the "core" to the orators at a rental of five dollars per week, which was estimated to be the amount required to pay the interest on the $3,000 for which the orators were to have the "core," the taxes and insurance on that property, and $50 a year for repairs.   This rental the orators continued to  pay Blanchard until he sold the "core" to defendant W. C. Perkins, as hereinafter stated.

In May, 1908, orator John asked Blanchard to have said oral agreement reduced to writing that the orators might have evidence of their rights, which Blanchard refused to do, and refused to deal further with orator John, but said that he would

convey the "core" to the orators at any time on payment of $3,000, and this Blanchard was ready and willing to do during, all the time that he held title to the "core." About this time, defendant W. C. Perkins, under Blanchard's employment, went upon the premises and surveyed and plotted the building lots. The orators complained that the lots so laid out left the "core" smaller than was contemplated by said oral contract. The land so in dispute is a strip sixteen rods long and two rods wide. Soon thereafter Blanchard moved the barn from the "core" onto one of the lots so laid out by Perkins, made it into a dwelling house, and caused the road that Perkins had laid out to serve the building lots to be worked.

On August 26, 1908, defendant W. C. Perkins, with full knowledge of the oral contract between the orators and Blanchard and of the latter's refusal further to deal with orator John, took from Blanchard to himself a lease of the "core" for one year, with the option to purchase it for $3,000; and, on September 11, following, he exercised that option and took a deed of the "core" from Blanchard to himself, with all the buildings thereon except the barn, which had not then been moved; and on February 9, 1909, he conveyed the "core" to his father, defendant David G. Perkins. The orators knew about the lease and deed from Blanchard to W. C. Perkins, and were satisfied therewith, but supposed that they had the same right to purchase from said Perkins that they formerly had to purchase from Blanchard under the terms of said oral contract; and, on September 1, 1908, the orators took from Perkins a written lease of the "core" for eight months, with the option to purchase it for $3,000. In view of the settlement with the Perkinses, which is referred to in the opinion, further statement of their relation to the controversy is unnecessary. The other material facts are recited in the opinion.

The prayer of the bill is that the conveyances from defendant Blanchard to defendant W. C. Perkins, and from the latter to his father, "may be cancelled and set aside as a fraud upon the rights of, and a cloud upon the title of, the orators; that defendant Blanchard be decreed to surrender up and convey to the orators the whole of said premises upon being paid the amount which he paid upon said decree of foreclosure with interest to the date

of said redemption, or in default thereof, that said Blanchard be decreed to move his said dwelling house within the limits of the nine lots originally agreed to be laid out upon the rear of said estate; be ordered to account to the orators for the damage to the physical condition of said estate by the acts of said defendant herein complained of, and for the price of said building lots; and for such other relief as to the court shall seem meet, and for their costs."

*Herbert W. Blake* for the orators.

*E. A. Cook* and *Williams & Dane* for the defendants.

Rowell, C. J.   It is said in the brief for the defendant Blanchard, who alone is defending, and not denied by the orators, that the orators have settled with the defendants Perkins, to one of whom Blanchard sold the homestead, called the "core" of the property in question, and that they are not now parties to the case.   We treat that as eliminating the "core," leaving only the matter of the building lots adjoining the "core," as to which the orators seek to make Blanchard account for their interest therein, if that be deemed more equitable than to make him reduce to writing the agreement of the parties found by the master concerning the whole property.   But the orators have nothing to gain in this suit by having that agreement reduced to writing, for the Statute of Frauds not being set up as a defence, it is just as enforceable here as though it were in writing, if an accounting can be had, which the defendant says can not be, because he says that whatever rights the orators might have had in respect of the division of the land into lots and the sale of them had they been free from misrepresentation themselves, are rights enforceable at law in an action for their stated share of the "purchase price" of the lots.   By the words, "purchase price," as here used, we think is meant the cash value of the lots, as no other purchase price is ascertainable, none of the lots having been sold; but the master finds that at the time of the hearing in July 1909, they were worth in the aggregate so much, which was twenty-five per cent more than they were worth in November, 1907, when the defendant took his deed from the bank.

But as the bill was properly brought for the purpose, in part, of obtaining a specific performance of the contract to the extent of having it reduced to writing as agreed, the case will be retained for all other purposes.

The defendant further says that the orators never had any equitable rights against him, and are entitled to no equitable relief, because he says that it was agreed between them that he should purchase the property of the bank at the amount of the decree, and that the orators should have an opportunity to purchase the "core" for $3,000 within a reasonable time; that the land outside the "core" should be divided into lots, and that the orator John and the defendant should use their joint efforts to sell the lots, and that the first money derived therefrom should be used to reimburse the defendant for the amount paid out by him in excess of the $3,000 he was to receive for the "core," the amount of which reimbursement was to be $900, after which the balance of the money derived from such sales was to be equally divided between the orators and the defendant; that the defendant was ready and willing at all times while he held the title, to convey the "core" to the orators at the agreed price; and that before the defendant conveyed the same to Perkins, a reasonable time for the orators to buy it had elapsed, but that they neglected and refused to exercise their right in that behalf, and had full knowledge of the defendant's conveyance to Perkins and were satisfied therewith. But there is nothing in all this that deprives the orators of their interest in the lots, nor releases the defendant from accounting to them therefor, for the agreement was divisible, the part relating to buying the "core" imposing no obligation upon the orators as it was a mere option to buy that they could exercise or not as they pleased, and was entirely separate and distinct from the part conferring rights upon them in respect of the lots.

The defendant also says that he was neither a necessary nor a proper party to any equitable claim the orators may have had against the defendants Perkins. But those defendants having been settled with and gone out of the case, the orators are now making no claim against them. But if the defendant means an out-and-out misjoinder, it is too late for him to raise that question, for the bill on its face shows the misjoinder,

if any there is, and as he neither demurred for that cause nor raised the question in his answer, he must be taken to have waived the objection. *Passumpsic Savings Bank* v. *Buck*, 71 Vt. 190.

The defendant further says that the orators are entitled to no equitable relief against him because he says that they themselves are not free from fraud in the transaction. This claim is based on the finding of the master that while the negotiations were going on between him and the orators concerning his buying the property as aforesaid, the orator John represented to him that he had customers to whom he could sell several of the lots, the names of which he gave to the defendant, which representation the defendant relied upon, and which tended to induce him to make the purchase; that shortly after the defendant took his deed, he interviewed the persons whose names the said John had given to him, and found that none of them had any notion of buying, and that none of them would buy; and it is found by the master that John had no reason to believe that any of them would buy. But this does not disentitle the orators, because, if for no other reason, the defendant has never rescinded nor offered to rescind the contract, and it is too late for him now to take anything by this objection. These are all the objections the defendant makes to the orators' demand upon him for compensation for their interest in the lots, and therefore we consider the case no further.

We note, however, that the bill is deficient in prayer, but no objection is made on that account. But the orators can if they think best, apply below for leave to amend in this respect. They urge several of their exceptions to the master's report, but in view of the position taken by the defendant, it is unnecessary to consider them.

Unfortunately, however, the master finds the value of the lots at the time of the hearing before him, whereas he should have found their value at the time of the commencement of the suit, for it is fundamental that the rights of the parties are to be determined as of that date.. *Hazen* v. *Lyndonville National Bank*, 70 Vt. 543, 555. The case, therefore, will have to go back to the master to find their value at that time.

*Decree reversed and cause remanded. Let there be a reference to the master to find and report the value of said lots at the time of the commencement of the suit; and on the coming in of his report, let there be a decree that the defendant account to the orators by paying to them their just share of such value, with interest thereon from said time.*

---

The foregoing mandate having been sent down, the defendant brings the case back under sections 1313-1316 of the Public Statutes, and seeks a rehearing on all questions regardless of whether they were . presented on the former hearing or not. But it has been held under this statute, as it was before its passage, that a rehearing will not be granted in this Court for the purpose of affording opportunity to present new questions. *Van Dyke* v. *Cole*, 81 Vt. 399. And it is a general rule that failure to present a case fully or to give sufficient attention to the argument on a former hearing, does not, in a court of last resort, afford ground for granting a rehearing. 18 Ency. Pl. & Pr. 11.

It is said in *Whiting* v. *Rowell*, 82 Cal. 635, that if parties do not take the trouble to call attention to the points on which they rely, they cannot reasonably expect the court to grant a rehearing for the purpose of considering them   piecemeal.

But if a material mistake of law is made in deciding questions raised, a rehearing may be had.

Now it is true, as said in the opinion, that we considered all the objections the defendant made to the orators' demand upon him for compensation for their interest in the lots; and one of the objections was, that in respect of the division of the land into lots and the sale of them,   the orators had a remedy at law for their share of the "purchase price," as the brief phrased it, which we took to mean cash value, as no "purchase price" was ascertainable, none of the lots having been sold, but which it is now claimed was used to indicate the prospective  proceeds of the lots, conceding that the phrase was unfortunate to that intent.   But taking it to mean what is now claimed, it makes no difference, for the point was made as going only to the jurisdiction of equity, and that was held to be conferred for all purposes

because the bill was properly brought for the purpose, in part, of obtaining specific performance of the contract to the extent of compelling its reduction to writing as agreed.

Another objection was, that the orators never had any equitable rights against the defendant, and were entitled to no equitable relief, because they neglected and refused to exercise their right to buy the "core." But this was answered by the fact that they were not bound to buy it, but could or not as they pleased, and therefore were not disentitled as to the rest of the contract by not buying it.

The only other objection to equitable relief was, that the orators were guilty of fraud in falsely representing that they had customers to whom several of the lots could be sold. But it was held that this did not disentitle them because, if for no other reason, the defendant never rescinded nor offered to rescind the contract. But the defendant now claims for the first time that he did virutally rescind it by his refusal further to deal with the orator John because the orators had failed to furnish customers for the lots and to do anything about buying the "core." He admits that in order to rescind you must put the other party *in statu quo,* but he says that here that was done by his refusal without more, because he received nothing of value from the orators, as they never had any equitable interest in the subject-matter of the contract, and consequently he had nothing to return, and so an offer to reinstate the orators was not necessary.

But the denial of equitable interest in the orators was not so broad as this before, but was, as we have seen, based wholly upon the neglect and refusal of the orators to exercise their right to buy the "core" and the fraudulent representations about their having customers to buy the lots, both of which claims were ruled against the defendant, so the result of our holding was that the orators had an equitable interest in the subject-matter of the contract, and were entitled to compensation therefor the defendant not having rescinded the contract; and this was undoubtedly right as the case was then presented, and the case will not be opened for further discussion of the question.

But the defendant says that if he is to account, he should not be made to account as of the time the suit was commenced,

but as of the time the orators first acquired the right to an accounting by reason of some default of his, by which we understand is meant, sometime earlier than the commencement of the suit. But he indicates no special time earlier, and logically enough, for he now claims broadly that there *is* no time earlier nor later, and that he should not be made to account at all. But before, if he was to account at all, and we said he must, he did not object to accounting as of the time of the hearing before the master, and that seems to have been the time the parties had in mind for an accounting, for the value of the lots at the time of that hearing was found and reported. But we said that their value should have been found as of the time the suit was commenced, because, on principle, the rights of the parties were to be determined as of that time, citing *Hazen* v. *Lyndonville National Bank*, 70 Vt. 543, 555, as authority for the proposition. It is now claimed by the defendant that the doctrine of that case on this point is not applicable here, because there it seems to have been applied to prevent the frustration of rights after suit commenced. But if that is so, and we are inclined to think it is, it makes no difference here, for the defendant tacitly conceded before that he must account if his objections to accounting were not sustained, as they were not, and seemed to have in mind that the accounting would be as of the time the hearing was held before the master, and not suggesting otherwise, he cannot well complain that the Court took an earlier time, though for a wrong reason, which most likely benefited him, as the lots were  increasing in value, according to the report.

*Rehearing denied, petition dismissed, and cause remanded.*