HOUGHTON RICE AND FRED BUGBEE, EXRS. *v.* BENNINGTON COUNTY SAVINGS BANK; CHARLES A. MAURER, CLAIMANT.

May Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 26, 1920.

*Motion for Directed Verdict—Sufficiency—Evidence Construed in Favor of Other Party—Bank Deposits—Gifts—Necessity of Intent to Transfer Title and Delivery—Burden of Proof on Donee—Order in Bank Book not Evidence of Gift —Facts Held Not to Establish Gift—Joint Tenancy in Personal Property—"Or" when Construed as "And"—G. L. 5376 Does Not Affect Title to Bank Deposit—Instructions— Substantial Compliance with Request—Gift to Attorney from Client—Reargument—Failure to Present Case Fully —Questions Not Presented at Former Hearing—New Trial Granted to Prevent Injustice.*

Where a motion for a directed verdict fairly raises certain questions, and it was so treated by the court below, the Supreme Court will so treat it.

On a plaintiff's motion for a directed verdict the evidence must be weighed in the light most favorable to the defendant.

To constitute a gift *inter vivos*, there must be an intention on the part of the donor to transfer the title to the property to the donee immediately and irrevocably, accompanied by such delivery as will place the donee in complete possession and control of the same, unless delivery is to a third person for the donee.

The burden of proving a gift is upon the alleged donee.

Where a purchaser of land from H., as part payment therefor, transferred a bank deposit to him, and at H.'s request the order of transfer read, "Pay to the order of H. or M., or either, or the survivor of either of them," the order did not import a gift of any part of the deposit from H. to M., nor, standing alone, was it evidence of one.

In such case, the order did not create a joint interest in the deposit in H. and M., but it became the absolute property of H.

In such case, the mere fact that H. had requested the order of transfer to be written as it was did not authorize the purchaser to deliver it and the deposit book to M. for the purpose of passing title thereto to M.

The facts in the case fail to show a donative intention on the part of H. to create a gift *in praesenti* of the bank deposit to M., or a valid delivery of the deposit book and order of transfer to M.

The provisions of G. L. 5376, relating to the payment of deposits made in banks in the names of two persons, payable to either, or payable to either or the survivor, do not relieve a party claiming such a deposit by gift from proving the facts necessary to constitute a gift.

A joint tenant of personal property has such title thereto that he may maintain an action against a co-tenant who sells or destroys the same.

The phraseology of the order of transfer did not import a joint tenancy or joint interest in H. and M.

While "or" may be construed for "and," and *vice versa*, when necessary to carry out the manifest intention of the parties, such construction is never resorted to for the purpose of supplying an intention not otherwise appearing.

The provisions of G. L. 5376 are for the protection of the bank paying money to persons named in deposits made in the manner specified

therein, and do not change or affect the title to such deposit.

Where the entire charge shows that the subject of a request was fairly dealt with, an exception to the court's failure to comply with the language of the request is without merit.

To cause a gift to an attorney from a client to be viewed with suspicion by the court something more than the mere relation of attorney and client must appear.

It is a general rule that failure to present a case fully or to give sufficient attention to the argument on a former hearing is not, in a court of last resort, ground for a rehearing.

The Supreme Court will not grant a rehearing for the purpose of permitting a party to raise questions not presented at a former hearing.

Where, on reversal of the judgment below, the prevailing party there claims that on a new trial he will be able to make a stronger case than at the former trial because certain important evidence there offered by him, and the benefit of which he is entitled to, was improperly excluded, the case will be remanded for another trial, to the end that no injustice be done.

ASSUMPSIT by the plaintiffs, as executors of the last will and testament of one Richard M. Houghton, to recover of the defendant Savings Bank a certain deposit claimed by them as the property of said estate, and also claimed by the claimant, Charles A. Maurer, as his property. Trial by jury at the December Term, 1918, Bennington County, *Fish,* J., presiding. Verdict and judgment for the claimant. The plaintiffs excepted. The opinion states the case.

*Henry Chase* for the plaintiffs.

*James K. Batchelder* and *Robert E. Healy* for the claimant.

SLACK, J. This is a controversy over the ownership of a deposit in the defendant bank. The plaintiffs claim that it belongs to the estate of Richard M. Houghton, deceased, and brought this suit to recover it for the estate. Maurer claims it as a gift *inter vivos,* and also that he acquired title thereto under an order given by one Hawks, concerning which more will appear later. Trial was had by jury. At the close of all the evidence the plaintiffs moved for a directed verdict. The motion

was overruled, subject to the plaintiffs' exception, and there was a verdict and judgment for the claimant.

While this motion is not in the most approved form we think that it fairly raised the questions: (1) That the evidence did not show a valid delivery of the order and bank book by Houghton to the claimant; and (2) that it did not show an intention on the part of Houghton to convey a joint interest in the deposit to the claimant. At least, it seems to have been so treated by the court below, and we so treat it. *Castonguay* v. *Grand Trunk Ry. Co.*, 91 Vt. 371, 100 Atl. 908.

Under this motion the evidence must be weighed in the light most favorable to the claimant. *Fitzsimons* v. *Richardson et al.*, 86 Vt. 229, 84 Atl. 811; *Morris* v. *Trudo*, 83 Vt. 44, 74 Atl. 387, 25 L. R. A. (N. S.) 33.

It tends to show that Houghton owned a place in Bennington which he sold to Hawks, early in September, 1917, reserving a life lease. Houghton was to take in part payment the deposit in the defendant bank, which Hawks then owned. He told Hawks that "he wanted the book payable to himself or Charles Maurer, or the survivor of either." Hawks went to the bank where the deposit was, accompanied by Maurer, to find out how the transfer should be made to meet Houghton's wishes. He there procured a blank order into which Maurer there wrote the words, "Richard M. Houghton or Charles A. Maurer, or either, or the survivor of either of them." They then returned to Houghton's house, the place sold to Hawks, the latter figured the amount due on the deposit, inserted it in the order and signed it; Maurer signing as a witness. It did not appear that Houghton knew that Maurer went to the bank with Hawks or that he had to do with writing the order. Maurer drew the deed from Houghton to Hawks and the life lease to Houghton, at Houghton's request, and was at the latter's house in connection with this transaction, when the order was completed and delivered. The material part of the order follows:

"Sept. 5th, 1917.

"Treasurer Bennington County Savings Bank:

"Pay to the order of Richard M. Houghton or Charles A. Maurer, or either, or the survivor of either of them," etc.

Hawks was called as a witness by the plaintiffs, and, after stating who was present when the deed was signed, testified touching the delivery of the order and bank book as follows:

"Q. As this part of the consideration was passed what did you do with this book and order personally?   A. I gave them to —on the table to Uncle Richard and Charles Maurer.

"Q. You left them on the table?   A. Yes, sir, I laid them on the table."

It appeared that the table referred to was Houghton's kitchen table; that Houghton, Maurer, and one Spencer were present at the time; that immediately following the incident testified to, the witness took his deed and went away.   On cross-examination by the claimant the witness testified:

"Q. And then you delivered the book and order, as you have already stated, to Uncle Richard Houghton?   A. Yes, and the check."

Recalled by the claimant, the witness testified:

"Q. You testified in your direct yesterday about the house of Richard Houghton when the deeds were delivered and this pass book and order were delivered to Mr. Houghton and Mr. Maurer.   Now I ask you if after that delivery, as you have stated, you saw that pass book in Mr. Maurer's hands?   A. Yes, sir.

"Q. And also in Mr. Houghton's?   A. Yes, sir.

"Q. Right on that occasion, this was?   A. Yes, sir, right then."

The claimant called his brother and one Cole, who testified that they saw the order and bank book in the claimant's possession at his office a short time after the order was given.   The latter part of September, Hawks helped Houghton clean out the latter's safe and then found the order and bank book among other papers of Houghton in the safe.   They were placed in an envelope, Houghton's name written thereon, and Hawks, accompanied by Houghton, went to the First National Bank of Bennington, where the envelope and its contents were delivered to the president of that bank; Hawks then telling him in the presence of Houghton: "Uncle Richard would like to have you take care of that envelope for him."   The envelope and its contents remained at that bank continuously thereafter until after the death of Houghton, which occurred the following November. The deposit still stands on the books of the bank in the name of W. E. Hawks, and it did not appear that either Houghton or the claimant ever tried to have it transferred or to draw any part of it.

32

At the time this order was given, Houghton was 78 or 79 years old. He had quite a large property and no relatives living, nearer than nephews and nieces. What his feelings toward them were did not appear. He had known the claimant more than twenty years and thought a great deal of him, both as a man and as a lawyer; referred to him as "My boy," and "My Charlie," and one witness testified that he once said to him "I wish I had a boy like that." During all that time the claimant did such law business (the amount not appearing) as Houghton had to do, *gratis.*

Considering these facts established, as we must, under this motion, do they tend to show a valid gift *inter vivos?*

To constitute such a gift there must be an intention on the part of the donor to transfer the title to the property to the donee immediately and irrevocably, accompanied by such delivery as will place the donee in complete possession and control of the same, unless delivery is to a third person for the donee, the effect of which we do not need to consider.

While it is true that the courts have relaxed, somewhat, the rigor of the old rule as to delivery, they have never departed from the rule that something more is requisite to constitute a gift than the expression of an intent or purpose to give. The donor must not only signify his purpose to give, but he must deliver. And so essential is delivery as a factor in the transaction that it is said: "Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite without which the gift fails, regardless of the consequences." The delivery must be made with the intention, on the part of the donor, that title to the subject-matter of the gift shall pass immediately, and it must be so full and complete that, if he resumes control over it without the consent of the donee, he will be answerable in damages as a trespasser. It matters not whether the subject of the gift be a horse, carriage, bond, note, certificate of credit, or bank deposit; both a *donative intention* and *delivery* must be clearly established. And the same rule obtains where the subject of the gift is a deposit standing as the deposit in this case would have stood had it been transferred in accordance with the mandate of the order, and where it was made, as in this case, by the direction of the donor with his funds. *Cochrane* v. *Moore,* 12 Eng. Rul. Cases, 410 (Lord Esher's Opinion); *Bean* v. *Bean,* 71 N. H. 538, 53 Atl. 907; *Whalen* v. *Milholland,* 89 Md. 199, 43

Atl. 45, 44 L. R. A. 208; *Colmary* v. *Fanning,* 124 Md. 548, 92
Atl. 1045; *McCullough* v. *Forrest,* 84 N. J. Eq. 101, 92 Atl. 595;
*Taylor* v. *Coriell,* 66 N. J. Eq. 262, 57 Atl. 810; *Schippers* v.
*Kempkes,* (N. J. Err. & App. 1907.), 67 Atl. 74, 12 L. R. A.
(N. S.) 355; *In re Bolin,* 136 N. Y. 177, 32 N. E. 626; *Schneider*
v. *Schneider,* 122 App. Div. 774, 107 N. Y. S. 792; *Meyers* v.
*Albert,* 76 Wash. 218, 135 Pac. 1003; *Denigan* v. *San Francisco
Savings Bank,* 127 Cal. 142, 59 Pac. 390, 78 Am. St. Rep. 35;
*Barstow* v. *Tetlow,* 115 Me. 96, 97 Atl. 829.

The latter case and *Trust Company* v. *Scanlon,* 26 R. I. 228,
58 Atl. 786, 3 Ann. Cas. 863, are cited in the claimant's brief.
The court held in those cases that a depositor of money in his
name and the name of another might constitute the latter a
joint· tenant, by ' a gift of 'an interest in the deposit, but they
recognize the necessity of a delivery. In the former, a Maine
case, the deposit in controversy was in a Rhode Island bank, and
the court·held that the law of that state governed in the de-
termination of the appellant's claim of title to the fund as the
surviving joint tenant of the deposit. The deposit was in the
names of "Amanda M. Kent or Ellen J. Tetlow or the survivor
of them." Mrs. Kent delivered the deposit book to Mrs. Tetlow
soon after the deposit was made, and the latter retained posses-
sion of it ever after. In *Trust Company* v. *Scanlon* the deposit
was in the names of "Patrick Scanlon or Dennis F. Scanlon, and
payable to either or the survivor of them." The donor delivered
the book to the donee, "saying that it was his to do with as he
pleased; that he could draw the whole or any part as 'he wished;
and that he must go to the bank the next day to sign the book."
From that time the book remained in the donee's possession,
except on two occasions when the donor drew small sums from
the bank *with the consent and at the request of the donee.*

In *Raferty* v. *Reilly,* 41 R. I. 47, 102 Atl. 711, another Rhode
Island case, decided in 1918, John Henry made a deposit and took
a certificate payable "to the order of John Henry and Edmund
Reilly or the survivor," and delivered the certificate to Reilly,
who retained it to the time suit was brought, after the death of
Henry. Henry was allowed to draw part of the deposit, but
Reilly always went to the bank with him and retained complete
possession of the certificate.

The delivery shown in each of these cases was sufficient to
pass title to the entire deposit. *Watson* v. *Watson,* 69 Vt. 243,

39 Atl. 201; *Goodrich* v. *Rutland Savings Bank,* 81 Vt. 147, 69 Atl. 651, 17 L. R. A. (N. S.) 181.   The donor divested himself of all control, both present and future, over the same.

The burden is with the claimant to establish that there was a gift.   *Meyers* v. *Albert, supra;* 20 Cyc. 1219; 12 R. C. L. 971; *In re Bolin, supra.*   The form in which the order was drawn does not import a gift, and, standing alone, is not evidence of one. *Schick* v. *Grote,* 42 N. J. Eq. 352, 7 Atl. 852; *Taylor* v. *Henry,* 48 Md. 550, 30 Am. Rep. 486; *Denigan* v. *San Francisco Savings Bank, supra; In re Bolin, supra; Schneider* v. *Schneider, supra.*

What took place at Houghton's house at the time the papers passed did not tend to show a delivery *to the claimant.*   On direct examination speaking of the order and deposit book, Hawks testified, "I gave them to—on the table to Uncle Richard and Charles Maurer," and on cross-examination he said that he "delivered them to Uncle Richard Houghton."   It is apparent that what he actually did was to leave them on Houghton's table, and that what he said about who he delivered them to was a mere inference on his part.   But suppose that, instead of placing them on the table, Hawks had actually delivered them to the claimant, but with no authority for so doing except the language of the order, which is all that appears in this case.   No one would seriously contend, we apprehend, that that would constitute such a delivery by *Houghton* as the law requires to create a valid gift. The mere fact that Houghton had requested the order to be written as it was did not authorize Hawks to deliver it and the book to the claimant for the purpose of passing title thereto to the claimant.   They belonged to Houghton, regardless of the phraseology of the order.   He had paid for them with his property.   They were his property, in another form, as much as the house, which he gave in exchange for them, had previously been They were his, and not Hawks' to give.   The fact that Hawks saw them in the hands of the claimant after they were placed on the table is of no force under the circumstances of the case. The claimant was present as the attorney of Houghton to attend the execution of the papers necessary to complete the transaction.   The transfer of the bank deposit was part of the transaction, and the claimant would have been remiss in the performance of his duty to his client had he failed to make such examination of the papers that evidenced the transfer of this deposit as was necessary to satisfy him of their validity.   Neither does the

bare fact that the book and order were later seen in his posses-
sion tend to show a delivery. It did not appear when, by what
means, or for what purpose they came into his possession. He
did not attempt to exercise any act of ownership over them while
in his possession—to draw the deposit or have it transferred on
the books of the bank—and returned them to Houghton in a
short time.

It may be conceded that the relations between these parties,
and the financial condition of Houghton, were such that a gift *in
praesenti,* or by will, by him to the claimant, would not have
been considered an unnatural act on his part. The fact that
Houghton directed the order to be made as it was may be con-
sidered as tending to show a then intention that the claimant
should have part or all of the deposit, *sometime,* but *when?* Im-
mediately, or upon the death of Houghton? The fact that the
deposit was never transferred on the books of the bank and
that Houghton retained possession and absolute control of both
the book and the order to the time of his death, except for the
short period when the claimant's evidence tended to show them
in the latter's possession, would seem to indicate the latter. In
our judgment the evidence does not tend to show a donative in-
tention on the part of Houghton to create a gift *in praesenti,* nor
does it tend to show a valid delivery.

It is said by the claimant that it has been the practice in
this State for many years to transfer deposit books by order like
the one before us, and that this is provided for by G. L. 5376.
Whatever the purpose or scope of this statute, neither its provi-
sions, nor any practice that we are aware of relating to the
transfer of bank deposits, have relieved a party claiming a de-
posit by gift from proving the facts necessary to constitute a
gift.

The claimant attempts to distinguish this case from cases
found in the books, on the ground that in those cases the deposit
in controversy originally stood in the name of the alleged donor
while here it stood in the name of Hawks. The only importance
that the court in those cases attached to the fact that the deposit
originally stood in the name of the donor was to show that he
was the sole owner of the deposit at the time of the alleged gift.
The fact that the deposit in this case stood in the name of Hawks,
at the time the order was given, does not affect the situation. The
deposit, as we have already said, belonged to Houghton. It is

not claimed that it ever belonged to the claimant prior to the execution of the order.

The claimant further contends that the order created a joint interest in the deposit in Houghton and the claimant, with the incident of survivorship, and that a delivery of the bank book and order by Hawks to either was in legal effect a delivery to both, and that the claimant's rights in the deposit were fixed when the book and order were delivered by Hawks, whether to Houghton or the claimant.

This position is untenable. For reasons already stated, the claimant has no better right to this deposit than he would have, had the money been handed to the bank officials by Houghton and an account opened in the names of Houghton and the claimant, as directed in the order.

In *Staples* v. *Berry*, 110 Me. 32, 85 Atl. 303, money belonging to Fred E. Savage was deposited to ''Nellie A. Savage and Fred E. Savage, may be drawn by either in any event.'' The deposit book was in their joint possession most or all of the time, each having access to it. Fred died and the widow claimed the deposit as surviving joint tenant. Touching this question, the court said: ''It is laid down by all the authorities that there are four essential characteristics of a joint tenancy: Unity of interest, unity of title, unity of time and unity of possession. * * * Unity of title means that the interests must accrue by one and the same conveyance; and unity of time that the interests must commence at one and the same time. * * * This would seem to contemplate conveyance or devise by A., the sole owner, to B. and C., as joint tenants, not as splitting up A.'s ownership so that B. becomes a joint tenant with A. But granting for the sake of argument that this might be done by carefully worded conveyance, it can hardly be said that this naked book entry meets the requirement which is so jealously guarded by the law, and that is the only evidence in the case to disclose the husband's intention. In the third place, a joint tenancy implies that the interests of the joint holders remain the same until death, and then that the survivor takes all. Here, according to the book entry, either party could at any time withdraw the entire deposit, so that the joint property would be dissipated and the survivor would take nothing. This is utterly at variance with the attributes of a joint tenancy.'' It was held that a joint tenancy was not established.

. The claimant in this case concedes that Houghton during his 'lifetime could have drawn and used the money on deposit, and it is not suggested that he would have been liable to the claimant had he done so. This is inconsistent with the claim that they were joint tenants in this deposit. A joint tenant of personal property has such title thereto that he may maintain an action against a co-tenant who sells or destroys the same. *Lewis* v. *Clark,* 59 Vt. 363, 8 Atl. 158; *Wilson & Gibbs* v. *Reed,* 3 John. 174; *Hyde* v. *Stone,* 9 Cow. (N. Y.) 230, 18 Am. Dec. 501; *Farr* v. *Smith,* 9 Wend. (N. Y.) 338, 24 Am. Dec. 162; *Lucas* v. *Wasson,* 14 N. C. 398, 24 Am. Dec. 266; *Andrews* v. *Johnson,* 17 Pa. St. 373, 55 Am. Dec. 565.

Moreover, the phraseology of the order does not import a joint tenancy, or joint interest. The language is "Richard M. Houghton, *or,*" etc.; not Richard M. Houghton *and.* While courts have construed "or" for "and," and *vice versa,* where such construction was necessary to carry out the manifest intention of the parties, such construction has never been resorted to for the purpose of supplying an intention not otherwise appearing.

The provisions of G. L. 5376 are for the protection of the bank paying money to persons named in deposits made in the manner specified in the statute, and do not change or affect the title to such deposit. ·

. The plaintiffs' motion should have been granted.

The plaintiffs excepted to the failure of the court to comply with that part of their third request which is as follows: "Complete and unconditional delivery is essential to the perfection of such gift; for when the donor retains dominion over the property there can be no legal and perfected donation. There must be a parting by the donor of all present and future legal power and dominion over the property." While the court did not follow the language of this request, an examination of the entire charge shows that the subject was fairly dealt with, and therefore the exception is without merit.

The plaintiffs excepted to the failure of the court to comply with their fourth request which was as follows: "While a gift from a client to an attorney during the relation is not void *ipso facto* it is viewed by the courts with the greatest suspicion." This request calls for a statement of an abstract proposition of law without reference to the facts and circumstances appearing

in the case on trial.    While the statement embodied in the request is to be found in some of the books, the cases show that where this degree of suspicion has been cast upon the transaction under consideration, something more appeared to create suspicion than the mere fact that the alleged donee was attorney for the alleged donor.    The nature of the gift, its value, the wealth of the donor, and other things are to be considered in determining the degree of suspicion.    Could it be said that a trivial gift by a wealthy client should be viewed with the *greatest* suspicion?    We think not.    The plaintiffs were not entitled to have this bald proposition stated to the jury.    To the charge on this subject, as given, no exception was taken.

Powers, J., dissenting.    I am wholly unable to agree with the conclusions reached by the majority.    At the outset, I am impressed with the fact that we have here an attempted donation, natural and meritorious, to which all persons in any way concerned have agreed; one that is in no way contrary to public policy; one wholly free from the taint of fraud or evil purpose. In these circumstances, and in the absence of a binding decision of our own, I would not allow a pure technicality to thwart so worthy a purpose.    I would decline to follow such courts as refuse to effectuate a donative intention so unmistakably manifested.    But it is not necessary to disregard the precedents in order to deal justly between these parties; for, as I shall attempt to show, my views are sustained both by reason and the weight of authority.

I agree that the arrangement here in question is, in essence, a gift.    I agree, too, that every gift involves a donative intent, and a delivery—or what in law amounts to that.    I agree that, speaking broadly, the general rule is correctly stated in the majority opinion.    But that this rule stands between this claimant and the benefaction intended for him, I deny.    We must remember that the case below stood on a motion for a verdict, and the judgment was for the claimant.    To sustain this judgment (the other exceptions aside) we need only find evidence in the record fairly and reasonably tending to establish the facts essential to the claimant's title.

The holding of the majority is that there is no evidence in the record tending to show (1) an intent to make a gift *in praesenti*, or (2) a delivery of the thing given.

The undisputed evidence is that when Hawks asked Houghton how he would have the transfer of the pass book made, he replied that he wanted the book made payable to himself or Charles Maurer or the survivor. Thereupon the advice of the treasurer of the bank was sought as to how this could be accomplished. Mr. Dewey told how it could be done, and, pursuant to his advice, the assignment was made as we find it. It is pertinent to inquire what *was* Houghton trying to do when he had the assignment made as it was and the fund made ultimately payable to the survivor? There is absolutely nothing to indicate that the arrangement was made for the convenience or to subserve any purpose of the donor. Every circumstance is corroborative of the purpose expressed in the order,—save, possibly this one. The majority say that Houghton kept the book. Assuming this to be so, the fact, in so far as it was entitled to any probative force, tended, it may be, to show that he did not intend a present gift; beyond this, the fact is without the slightest significance.

My reference to the circumstances is not to be taken as an admission that it was necessary to supplement the order itself with further proof in order to make the case for the jury on the question of donative intent. The order on its face imports a joint ownership with the right of survivorship (*Erwin* v. *Felter*, 283 Ill. 36, 119 N. E. 926, L. R. A. 1918E, 776; *Kelly* v. *Beers*, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543), and was enough to send the case to the jury on that question.

As I have said, I agree that every gift implies a delivery, or what amounts to that. But it is not every gift that requires a hand to hand delivery—the manual tradition of the common law. All that is required is such a consummation as the character of the subject-matter of the gift admits. Just what physical facts are required to effectuate a donative intent depends upon the character of the thing given. When the thing given is corporeal property, a physical delivery, actual or constructive, is required. But we are not here dealing with a transfer of corporeal property; we are dealing with the transfer of incorporeal property—a contract right, a chose in action. We commonly speak of the pass book as representing a *deposit* in the bank, as though certain specific funds could be demanded under it. But as the cases show, our language is figurative. What the book represents is a credit—a right to demand and receive a sum owed by the bank. The book is not even a contract in the full

sense of the term. *Talcott* v. *First National Bank,* 53 Kan. 480, 36 Pac. 1066, 24 L. R. A. 737 and note. It is a mere written admission as to the state of the account. Moreover, the subject of this gift is not the thing itself, but a joint interest in the thing. The character of the subject-matter of the gift is such that, necessarily, the donor retains as much as he transfers. He cannot exclude himself from *all* control over the fund, for then the title would not be joint. But he excluded himself from all control over the interest he gave away. The majority say that the gift of a savings bank deposit requires a delivery. That it requires what amounts to a delivery, I agree. They cite Maryland and New Jersey cases in support of this proposition. That the law of Maryland is with the majority, as is the law of Maine, I have no doubt. In these states a delivery of the pass book is required to make the gift of the deposit complete. But the law of New Jersey is with me, and a delivery of the pass book is not required. *Dunn* v. *Houghton* (N. J. Ch.) 51 Atl. 71. In this case is to be found a very intelligent and instructive discussion of this whole subject by Vice Chancellor Stevenson, which is well worth reading. His conclusion is that in the case of joint deposits no actual delivery of anything to the donee is required, because the absolute undertaking of the bank to pay the donee takes the place of delivery.

In *Dennin* v. *Hilton* (N. J. Ch.) 50 Atl. 600, though the book was delivered to the donee, Vice Chancellor Pitney says, in speaking of a joint deposit made by a decedent: "She vests the right to demand that money in herself and Captain Hilton, jointly. This is delivery, so to speak."

In *East Rutherford Savings, Building and Loan Assn.* v. *McKenzie,* 87 N. J. Eq. 375, 100 Atl. 931, the title to certain building and loan association certificates and a pass book of installment shares therein was in question. Old certificates and an old pass book, both standing in the name of the owner, were surrendered by him, and new ones were issued to himself and wife, with a provision for survivorship; he took and retained the new certificates and pass book. Vice Chancellor Howell recognizes the fact that a donative intent must, in such cases, appear, and says that a delivery, or what amounts to delivery, must be shown; and that the donor must rid himself of all control of the subject-matter of the gift.. But he concludes that the transaction showed "a delivery of the subject-matter of the gift within the

requirements of the law on the subject." There was evidence that the donee acquired possession of the certificates and book before the donor's decease. But the Vice Chancellor disregards this fact, and puts the decision squarely upon the ground that "by virtue of the transaction above recited (the transfer), the title to said shares and pass book, and the fund represented by them vested in Mr. and Mrs. McKenzie as joint tenants" on the date of the surrender of the old papers and the issuance of the new ones. This opinion of the Vice Chancellor was so satisfactory to the Court of Errors and Appeals that the decree in favor of the surviving wife was affirmed for the reasons therein stated, without further opinion.

Reference is made by the majority to certain Rhode Island cases, and it is said that they recognize the necessity of delivery. True, but that court does not sustain the majority by holding that a delivery of the pass book is necessary. On the contrary, they hold that a delivery of the pass book is not necessary. In *Whitehead* v. *Smith*, 19 R. I. 135, 32 Atl. 168, a father deposited money to the credit of himself or his daughter, payable to either or the survivor. It was held that the deposits became the joint property of the parties during their mutual lives, and passed immediately to the daughter upon the father's death.

The last word of that court on this subject was spoken in *Marston* v. *Industrial Trust Co.* (R. I.) 107 Atl. 88. Laura C. Marston had a deposit in her own name. She directed the Trust Company to change the account to "Laura C. Marston or George S. Marston, payable to either or to the survivor." Mr. Marston never had possession of the bank book. It was held that a delivery of the book was not a prerequisite to the creating and passing of a joint title in the deposit, and that Mr. Marston took the same by right of survivorship. The court said that when it is clear that the parties intended to create a joint account, "so that both of the parties have an equal right to draw on the funds, it is immaterial which holds the book."

A delivery of the pass book is not required in Connecticut. *Appeal of Buckingham*, 60 Conn. 143, 22 Atl. 509; *Candee* v. *Connecticut Sav. Bank*, 81 Conn. 372, 71 Atl. 551, 22 L. R. A. (N. S.) 568. It was held in *Main's Appeal*, 73 Conn. 638, 48 Atl. 965, that the gift failed because it was considered that the arrangement was an attempted testamentary transfer, but the court said that, if it had been the intention of the depositor

"that a joint interest with herself in the money should immediately vest in her daughters, the gift would not have failed because she retained possession of the bank books. Her possession as a joint owner would have been regarded as the possession of the other joint owners."

A delivery of the pass book is not required in Illinois. In *Erwin* v. *Felter, supra,* a person deposited her own money in a bank, and took out certificates running to herself "or Mrs. Martha D. Erwin, or the survivor of either," which certificates were not delivered to Mrs. Erwin, but were left with the bank under a receipt running to the depositor. Upon the death of the latter, it was held that Mrs. Erwin took the funds by right of survivorship.

A delivery of the pass book is not required in Pennsylvania. *In re Parry's Est.,* 188 Pa. 33, 41 Atl. 448, 49 L. R. A. 444, 68 Am. St. Rep. 847, involved the title to a letter of credit purchased with the husband's money, but running to himself and wife. There was nothing to show that the letter was ever delivered to the wife. The court said: "We are clear the writings created an estate, as between husband and wife, by entireties; and such an estate, at common law, goes to the survivor. This estate may be created in a chattel as well as realty; in a chose in action and one in possession."

In *Blick* v. *Cockins,* 252 Pa. 56, 97 Atl. 125, the ownership of certain bank balances standing in the names of a man and his wife was involved. These balances were "subject to the order of either or survivor." Much of the money deposited was that of the wife, but the president judge of the common pleas, whose opinion was adopted as the opinion of the Supreme Court, said that fact made no difference; that the wife had the right to give property over to herself and husband as joint owners, and that "the deposit of it in this way" had that effect. The title to the surviving husband was sustained.

In Michigan a delivery of the pass book is not required. In *Negaunee Nat. Bank* v. *LeBeau,* 195 Mich. 502, 161 N. W. 974, L. R. A. 1917D, 852, a father deposited his money in the name of himself and daughter, with a provision that each might draw therefrom "during their joint lives, and that any balance upon the death of either shall belong to the survivor." The father retained the pass book. The daughter survived him, and it was held that she was entitled to the fund. It appeared in that case

that the daughter came into possession of the pass book before the father's death. But the court did not consider this fact, saying: "It is not necessary to predicate determination upon the fact that the pass book prior to the death of Euchrist LeBeau was in the possession of the donee, and to draw an inference from that possession that the same was given to her by her father in his lifetime with the intention of giving her the fund represented thereby. He had already given her the fund by his unequivocal act at the moment the deposit was made."

A delivery of the pass book is not required in California. In *Kennedy's Admr.* v. *McMurray,* 169 Cal. 287, 146 Pac. 647, Ann. Cas. 1916D, 515, a deposit was made in the name of a father and daughter, with a provision that the sums so deposited should be "joint as to time, title and possession," and should be payable to either of them. The title to the surviving daughter was upheld, and the court said that the fact that the father retained exclusive control of the pass book during his lifetime did not affect the result.

I am not so sure of the law of New York or Missouri. I do not find a decision of the court of last resort in either state. In the former, there is some confusion in the decisions of the inferior courts. But in *McElroy* v. *National Sav. Bank,* 8 App. Div. 192, 40 N. Y. S. 340, a husband made a deposit to the credit of himself and wife, with a provision that either or the survivor might draw; and it was held that the gift did not require a delivery of the pass book to complete it. In *West* v. *McCullough,* 123 App. Div. 846, 108 N. Y. S. 493, a husband opened a savings bank account in the name of himself and wife, and it was held that the latter acquired a right of survivorship. The court said that at common law a husband could, by making a deposit or taking a security in the name of himself and wife, create a right of survivorship in the wife; and that the transaction was not strictly a gift *inter vivos* or *causa mortis,* and that delivery was "neither necessary nor practical."

In *Commonwealth Trust Co.* v. *Du Montimer,* 193 Mo. App. 290, 183 S. W. 1137, it was held that when a deposit was made in a savings bank in the name of the depositor and another, there was a completed gift of a joint interest therein, though the depositor retained the pass book.

Other cases reject the doctrine that the transaction is a gift. In *Deal's Admr.* v. *Merchants' & Mechanics' Sav. Bank,* 120 Va.

297, 91 S. E. 135, L. R. A. 1917C, 548, a decedent deposited money to the joint account of herself and sister. In holding that the surviving sister took the fund, the court put its decision on the ground of the contract entered into by the bank when it accepted the deposit, saying: "It was a pure contractual relation, and no question of gift or trust arises in determining the rights of the parties under such a contract."

In *Chippendale* v. *North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371, it was held that, where a depositor provided that funds theretofore standing in his name should be paid during the joint lives of himself and sister to either of them, and what remained, to the survivor, the contract with the bank vested title to the bank book and deposit in the sister after the depositor's death, not by way of gift, but by force of that contract.

Our own cases are in entire accord with the reasoning of these cases. While we treat such transactions as gifts, we treat the contract as the basis of the right. In *Howard, Admr.* v. *Windham County Savings Bank,* 40 Vt. 597, one deposited money to the credit of another and took and retained the pass book. This Court held that a gift was thereby perfected. But where was the delivery? The answer is simple enough: There was nothing to deliver. The bank by accepting the deposit in the name of the donee became the debtor of the donee. The rights of the donee vested at once, and the engagement of the bank took the place of and was equivalent to a delivery of the thing given. "The bank," says Judge WILSON, "in virtue of the deposit, had the right to regard Adaline F. Brown (the donee) as the depositor and legal owner of the money. The transaction constituted an agreement, a legal privity between the bank and Adaline F. Brown, by force of which the bank became accountable to her and to no other person."

In harmony with this holding is *Mason* v. *Hyde,* 41 Vt. 232. Thomas Hyde, in consideration of a town order made payable to his son Horace, agreed to enlist to the credit of the town of Barton. Such an arrangement was consummated and Hyde enlisted and died in the service. The order was delivered to Thomas and was never delivered to Horace. A question arose between the administrator of the former and the guardian of the latter as to the ownership of this order. It was held that Horace owned the order by force of the original contract. "The legal title to the order," says the Court, "and the money therein speci-

fied, vested in Horace H. Hyde from the beginning, and there was no necessity of any further delivery of the order in order to perfect his title to the property.''

I am not unmindful of the fact that this deposit stood in the name of Hawks and that the claimant's interest came only by way of an assignment from Hawks. So did Houghton's. The result is the same. The bank approved the arrangement in advance. The claimant's rights vested immediately upon the conclusion of the deal between Houghton and Hawks.

Thus far, I have said nothing regarding the evidence tending to show an actual delivery of the pass book. I have not overlooked it, however, and I insist that on this question, also, the case was for the jury. Hawks testified that he delivered the book to them—meaning Houghton and the claimant. The book then passed from hand to hand between them. The delivery to one joint tenant is a delivery to both. *East Rutherford Savings, Building and Loan Assn.* v. *McKenzie, supra.* The book was afterwards in the claimant's possession. All this was enough to send the case to the jury for such inferences and conclusions as seemed to them warranted.

Much stress is laid by the majority upon the use of the word ''or'' instead of the word ''and'' in this order. If its terms had been to pay Houghton or the claimant, with nothing more, I might not take issue on this point. But when the words ''or the survivor'' are added, a very different situation is created. Then, the use of the word ''or'' will not be allowed to defeat the donative intent so unmistakably indicated. *Dunn* v. *Houghton, supra.* In *Kelly* v. *Beers,* 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543, *Erwin* v. *Felter, Marston* v. *Industrial Trust Co.,* and *Whitehead* v. *Smith, supra,* the word ''or'' is the word used.

Much stress is also laid by the majority upon the fact that Houghton could withdraw all the funds and thus in effect destroy the gift. So could the claimant. But this does not affect the result. It was an incident of the relation established in the deposit. *Dunn* v. *Houghton, supra; Kelly* v. *Beers, supra.* He could have done this if he had made delivery of the book. He would then be as much entitled to the possession of the book as the claimant; and it is only a rule of the bank that required the production of the book, which rule could be waived at the pleasure of the bank.

So far as considered, the record shows no error.

MILES, J., concurs in this dissent.

## On Motion for Reargument.

Slack, J.   After the foregoing opinion was promulgated, the claimant moved for leave to reargue the case, and incorporated into his motion an exhaustive brief, wherein he cited a large number of authorities not cited in his original brief.   He asked for a reargument on the grounds that the case was not thoroughly argued orally, that it is of great importance to himself and many others, and in view of new points made in the motion, and new authorities cited.   He was represented in the trial below, and at the hearing in this Court, by the same able counsel who present this motion.   At the hearing in this Court they submitted a brief of nineteen pages, and argued the case orally as fully as they desired to,—at least they did not intimate the contrary.

Moreover, "it is a general rule that failure to present a case fully or to give sufficient attention to the argument on a former hearing does not, in a court of last resort, afford ground for granting a new trial."   *Cunningham* v. *Blanchard,* 85 Vt. 494, 501, 83 Atl. 469, 472.

Neither will this Court grant a rehearing for the purpose of permitting a party to raise questions not presented at a former hearing.   *Cunningham* v. *Blanchard, supra; Van Dyke* v. *Cole,* 81 Vt. 399, 70 Atl. 593, 1103.

All questions raised by the motion, except the last, fall within one or the other of these two rules, and therefore do not show grounds for reargument.

The last point made in the motion does not concern the question of reargument, but rather the disposition that should be made of the case.

It is there claimed by the contestant that on a new trial he will be able to make a stronger case than he was able to make at the former trial because certain important evidence then offered by him, and the benefit of which he is entitled to, was improperly excluded.   Whether or not such evidence was admissible is not now before us to pass upon.   Yet we think, in view of the claim made, that under our practice the case should be sent back for another trial, to the end that no injustice be done.   *Hebard* v. *Cutler,* 91 Vt. 218, 99 Atl. 879; *Gaines* v. *Baldwin,* 92 Vt. 451,

104 Atl. 825; *La Pointe* v. *Sage,* 90 Vt. 560, 99 Atl. 233; *Bonnette* v. *Molloy,* 209 N. Y. 167, 102 N. E. 359.

*Motion to reargue denied. Judgment reversed and cause remanded.*